■ MARILYN BIKOWICZ et al., Respondents, v STERLING DRUG, INC., et al., Appellants.—Harvey, J. Appeals (1) from a judgment of the Supreme Court (Lynch, J.), entered January 27, 1989 in Schenectady County, upon a verdict rendered in favor of plaintiffs, and (2) from an order of said court, entered April 13, 1989 in Schenectady County, which denied defendants' motion to set aside the verdict.

Plaintiff Marilyn Bikowicz (hereinafter plaintiff) commenced this action seeking recovery for damages incurred as a result of her addiction to Talwin, a prescription drug manufactured and distributed by defendant Sterling Drug, Inc., through its subsidiary defendant Winthrop Laboratories, Inc. (hereinafter collectively referred to as defendants).[1] Also named as defendants in the suit were Nedco Pharmacy (including its various owners), and Drs. Eleanor Hinse and James Cunningham, plaintiff's treating physicians.

Hinse began administering Talwin to plaintiff in 1968 as treatment for her migraine headaches. Originally the injections were administered at Hinse's office or at a hospital. When plaintiff told Hinse in February 1973 of an upcoming lengthy trip to Florida, Hinse wrote a prescription for Talwin, Dramamine and disposable syringes. She also instructed plaintiff's husband on how to administer the injections. Allegedly this prescription was not refillable yet plaintiff, from 1973 through 1981, obtained many refills from Nedco Pharmacy through its respective owners even though Hinse stopped treating plaintiff in 1975. By 1980, plaintiff was allegedly injecting one shot per hour. When she was admitted to the hospital in July 1980 for an unrelated problem, she apparently realized that she was addicted to Talwin and her neurologist discussed the problem with Cunningham, a psychiatrist. As part of an over-all treatment plan, Cunningham prescribed decreasing doses of Talwin over the period of plaintiff's hospitalization. Upon her discharge from the hospital, however, plaintiff told Cunningham of another impending trip, and Cunningham gave her a prescription for injectable Talwin that would reportedly last until plaintiff's trip ended. This

---

1. A more detailed recitation of the facts in this case can be found in this court's prior decision in Bikowicz v Nedco Pharmacy (130 AD2d 89).

prescription was also allegedly nonrefillable as originally written. Nonetheless, plaintiff managed to obtain repeated refills from this prescription and the original 1973 prescription until she was admitted to a detoxification unit in 1981. As a result of repeated injections of Talwin in the leg and thigh area over the years, plaintiff suffered serious and permanent damage to those areas.

Prior to trial, Nedco Pharmacy, its respective owners and plaintiff's physicians settled with plaintiff for the collective sum of $400,000. Following the submission of all evidence at trial, three theories were submitted to the jury for its consideration: failure to warn, negligent testing and negligent marketing. Although the jury found for plaintiff with respect to the negligent testing and marketing claims, the jury concluded that any breach by defendants of their duty to warn of the risks associated with Talwin was not the proximate cause of plaintiff's injuries. The jury awarded plaintiff $650,000 and apportioned the liability as follows: 65% to Nedco Pharmacy and its various owners, 18% to plaintiff and 17% to defendants. The jury awarded no punitive damages or moneys for her husband's derivative cause of action. Defendants now appeal both the judgment entered on the verdict and the order denying defendants' unsuccessful posttrial motion to set aside the verdict.

Initially, defendants contend that Supreme Court erred in refusing their request to charge the jury as to the law governing superseding causes as set forth in the Pattern Jury Instructions (see, PJI 2:72). Defendants argue that in light of the evidence adduced at trial concerning the intentional and/ or culpable conduct of plaintiff and the respective Nedco pharmacists, a jury charge on the law governing superseding causes was warranted. With this contention we agree.

In order to establish a prima facie case, a plaintiff must generally show that the "defendant's negligence was a substantial cause of the events which produced the injury" (Derdiarian v Felix Contr. Corp., 51 NY2d 308, 315; see, Kush v City of Buffalo, 59 NY2d 26, 32-33; Mack v Altmans Stage Light. Co., 98 AD2d 468, 470). Nonetheless, any break in the nexus between the defendant's negligence and the plaintiff's injury caused by the act of a third party or the plaintiff herself may affect the liability of the defendant (Kush v City of Buffalo, supra, at 33; see, Muhaymin v Negron, 86 AD2d 836, 838). Whether the defendant's liability is affected depends, in turn, on "whether the intervening act is a normal or foreseeable consequence of the situation created by the defen-

dant's negligence" *(Derdiarian v Felix Contr. Corp., supra,* at 315). If the intervening act is a natural, normal and foreseeable consequence of the situation created by the defendant, the defendant will continue to be liable *(Lynch v Bay Ridge Obstetrical & Gynecological Assocs.,* 72 NY2d 632, 636-637; *Kush v City of Buffalo, supra,* at 33). On the other hand: "An intervening act will be deemed a superseding cause and will serve to relieve defendant of liability when the act is of such an extraordinary nature or so attenuates defendant's negligence from the ultimate injury that responsibility for the injury may not be reasonably attributed to the defendant" *(Kush v City of Buffalo, .supra,* at 33). Accordingly, "an intervening act which is 'not foreseeable in the normal course of events, or independent of or far removed from the defendant's conduct * * * may well be a superseding act which breaks the causal nexus' " *(Lynch v Bay Ridge Obstetrical & Gynecological Assocs., supra,* at 636, quoting *Derdiarian v Felix Contr. Corp., supra,* at 315). Moreover, when the intervening act is intentional or criminal in nature, the liability of the original tort-feasor will usually be severed, unless such intentional or criminal intervention was reasonably foreseeable *(Kush v City of Buffalo, supra,* at 33).

In the case at bar, plaintiff did, despite defendants' contentions to the contrary, present a prima facie case with respect to her claims. However, defendants correctly conclude that the evidence pertaining to the conduct of the Nedco pharmacists and that of plaintiff herself warranted charging the jury on the issue of superseding causes. For example, with respect to the Nedco pharmacists, there was evidence produced at trial to the effect that all of the pharmacists illegally and improperly refilled the February 1973 prescription written by Hinse for Talwin, Dramamine and syringes in quantities beyond that called for in the prescription *(see,* Education Law § 6810 [2], [4]), illegally sold syringes to plaintiff *(see,* 10 NYCRR 80.131, eff Apr. 1, 1973; *see also,* Public Health Law § 3381 [3]), and failed to properly label the vials of Talwin and maintain proper records *(see,* Public Health Law § 3333). There was also evidence presented concerning the conduct of the later owners of Nedco Pharmacy, Joseph and Joanne McTague, from which a jury could conclude that they were criminally culpable for, among other things, improperly refilling Cunningham's 1980 prescription.

Although these individuals generally denied any wrongdo-

ing,[2] ample evidence was presented concerning their alleged culpable conduct to justify the requested jury charge. Similarly, regarding plaintiff herself, there was sufficient evidence of plaintiff's own intentional or culpable conduct to justify an inference that her actions exceeded mere contributory negligence and could be considered a superseding force that would absolve defendants from any alleged liability (see, *Mesick v State of New York*, 118 AD2d 214, 218, *lv denied* 68 NY2d 611; see also, *Roberts v Town of Colchester*, 139 AD2d 819, 821-822). Although plaintiff maintains that she did not obtain Talwin illegally, she readily admits that she not only continued to refill the 1973 prescription written for her Florida trip long after she returned, but also after she stopped treatment with Hinse in 1975. Plaintiff also admitted that she took Talwin in ways she knew she was not supposed to and further admitted that, at one point, she was simultaneously refilling two separate prescriptions for Talwin at two different pharmacies without the respective knowledge of either the pharmacists or the prescribing physicians. Additionally, plaintiff testified that she *may* very well have lied to the pharmacists or *may* have made up excuses that were not true in order to obtain additional amounts of Talwin.

With this evidence before the jury, it is apparent that Supreme Court erred in refusing to charge the jury on the issue of superseding causes; the matter must therefore be remitted for a new trial. We also note that Supreme Court erred in refusing to charge that an unfavorable inference could be drawn against the McTagues for asserting their 5th Amendment privilege (see, *Kuriansky v Bed-Stuy Health Care Corp.*, 135 AD2d 160, *affd* 73 NY2d 875). Plaintiff argues that the rule allowing an adverse inference charge to be given in a civil case does not apply here because the McTagues were not parties. However, although plaintiff did settle with the McTagues prior to trial, defendants successfully interposed a defense under General Obligations Law § 15-108 requiring the jury to apportion any damages recovered by plaintiff between defendants and the settling tort-feasors. Clearly, the McTagues' conduct was highly relevant with respect to the issue of causation and played an important role during the jury's apportionment of liability. Accordingly, although it can be argued that the McTagues were not technically "parties", the requested charge should have been given in this case because

2. Since the McTagues took the stand and chose to invoke their 5th Amendment rights, their respective pretrial depositions were read into evidence.

otherwise the jury would not have been allowed to consider the full effect of the McTagues' conduct, including their refusal to testify.

Finally, concerning certain evidentiary rulings made by Supreme Court at trial, we conclude that the court did not abuse its broad discretion in determining issues of relevancy (see, Fisch, New York Evidence § 3, at 3 [2d ed]; Richardson, Evidence § 4, at 2 [Prince 10th ed]; 57 NY Jur 2d, Evidence, §§ 178-179, at 396-400). Examination into the remaining issues in this case has been rendered unnecessary by our decision to remit the matter to Supreme Court for a new trial.

Judgment and order reversed, on the law, and matter remitted to the Supreme Court for a new trial, with costs to abide the event. Casey, J. P., Mikoll, Yesawich, Jr., Mercure and Harvey, JJ., concur.