■ State of New York, Respondent, v Leah Markowitz et al., Appellants. [710 NYS2d 407] —Spain, J. Appeal from a judgment of the Supreme Court (Teresi, J.), entered January 19, 1999 in Albany County, upon a verdict rendered in favor of plaintiff.

Following a jury trial, two corporations and two individuals who owned the corporations' stock and acted as their sole officers were held liable under Navigation Law § 181 (1) for cleanup costs for oil spills occurring on property owned by one

of the corporations and operated by the other. A third individual who neither owned stock in either corporation nor held any position therein was also held liable under Navigation Law § 181 (1). This appeal requires this Court to address questions primarily concerning the extent to which personal liability under Navigation Law § 181 (1) may be imposed upon the individual noncorporate defendants, if any. For reasons to follow, we find that none of the individual defendants should have been held personally liable.

The following facts were adduced at trial. During the relevant period, defendant Think Big Auto Rental and Leasing, Inc. owned a parcel of land in Bronx County which was improved by a gas station. Until his 1993 death, Emanoil Marcovici was the sole shareholder and sole officer of Think Big. Defendant 242 East 138th Street, Inc. (hereinafter East 138th Street), the lessee of the site, operated the gas station thereon. Defendant Gurmit Singh Dhinsa was the sole shareholder and sole officer of East 138th Street. In April 1991, gasoline was discovered seeping into a utility tunnel beneath a street adjacent to the site, and the Department of Environmental Conservation (hereinafter DEC) ultimately determined that the principal cause of the spill was that a delivery truck had overfilled one or more of the station's four gasoline storage tanks. Tank leakage tests conducted the following day indicated that one of the storage tanks—containing diesel fuel—showed a leakage rate slightly above that allowed.[1] Shortly thereafter, a private contractor—apparently hired by East 138th Street— installed overfill protection devices on the tank fill lines, but not on the stick lines which are capped openings in each tank used to gauge the amount of gasoline in the tank by use of a measuring stick. There is evidence that the caps used to cover and seal these stick lines were, at times, removed and left off by East 138th Street employees creating a danger of spillage during deliveries if the tanks were overfilled.

On May 10, 1991 DEC mailed a letter addressed to Marcovici stating that it had received information that he was the owner of the site. The letter indicated the results of its investigation, recommended a number of remediation procedures and advised that DEC would remediate the site and seek reimbursement if he did not do so himself.[2] Marcovici's attorney responded by letter advising DEC that the corporate

---

**1.** The same tank was tested eight weeks later and tested within the permissible parameters.

**2.** DEC's recommended procedures included, *inter alia*, the installation of overfill protection on the fill lines (no mention was made of the stick lines),

entity—Think Big—owned the site and that Marcovici was merely the principal of that corporation. The letter denied that any of the tanks were leaking but agreed to advise East 138th Street of DEC's notice and to provide DEC with the results of more recent tank tests which confirmed that there were no tank failures.

In August 1991, after another spill was detected at the site, DEC mailed a letter erroneously addressed to "Mr. L. Markowitz" to defendant Leah Markowitz[3] —Marcovici's daughter-in-law—stating that DEC had undertaken the remediation measures. The letter—apparently referring to DEC's earlier letter to Marcovici—erroneously states "[o]ur last correspondence with you was a letter dated May 10, 1991" and that "[y]ou have been advised repeatedly that a serious problem exists and you have decided *not* to perform the necessary remedial work [emphasis in original]." Notably, this letter was not sent nor copied to Marcovici or to Think Big; it was copied to Marcovici's attorney. When Marcovici thereafter died in 1993, his wife was appointed the executor of his estate and, upon her death in 1995, their granddaughter Orit Markowitz—Markowitz's daughter—was named administrator of her grandfather's estate. Neither Dhinsa—who was known to DEC from the outset—nor East 138th Street were sent any DEC noncompliance correspondence regarding this site prior to the commencement of this action.

In August 1996 plaintiff commenced this Navigation Law § 181 (1) action seeking to hold Marcovici's estate, Dhinsa and Markowitz personally liable, jointly and severally with the corporations—Think Big and East 138th Street—for clean-up costs (*see*, Navigation Law § 181). Plaintiff also sought statutory penalties against each defendant (*see*, Navigation Law § 192).

The jury found all of the individual and corporate defendants jointly and severally liable to plaintiff for clean-up costs of $910,000 and future costs of $150,000. The jury also assessed a $1 million penalty against Markowitz and a penalty of $2.25 million each against Marcovici's estate, Think Big, Dhinsa and East 138th Street. Only Markowitz, Marcovici's estate, Dhinsa and East 138th Street have appealed. Notably, in its appeal,

---

testing the tanks and excavating the tank for possible repair in the event it was leaking.

**3.** Leah Markowitz, the daughter-in-law of Marcovici, is the widow of Marcovici's son, Mike Markowitz, who died in 1989. Significantly, she has never held any ownership interest in nor was she ever an officer of Think Big or East 138th Street.

East 138th Street only challenges the legality of the statutory penalties imposed against it and does not contest its liability for the clean-up costs. Thus, our primary focus will be on the propriety of imposing personal liability upon the individual defendants under Navigation Law § 181 (1).

We begin our analysis recognizing that Navigation Law § 181 (1) provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs * * * no matter by whom sustained." Further, a "discharge" is defined as "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters" (Navigation Law § 172 [8]). The Court of Appeals has not yet addressed the issue of precisely who can be held liable as a discharger, a term not defined in Navigation Law article 12 (see, Matter of Art-Tex Petroleum v New York State Dept. of Audit & Control, 93 NY2d 830, 832; White v Long, 85 NY2d 564, 568; see also, Drouin v Ridge Lbr., 209 AD2d 957, 958).

This Court has construed Navigation Law § 181 (1) to impose strict liability on corporations and individuals who directly own the system from which a discharge occurred; such liability has been held to attach despite a lack of proof that the owner caused or contributed in any way to the discharge (see, State of New York v Green, 271 AD2d 11 [decided herewith]; Matter of White v Regan, 171 AD2d 197, 199-200, lv denied 79 NY2d 754; State of New York v Wisser Co., 170 AD2d 918; State of New York v New York Cent. Mut. Fire Ins. Co., 147 AD2d 77; see also, White v Long, supra, at 568; but see, Drouin v Ridge Lbr., supra, at 957). However, the appellate case law in this State interpreting Navigation Law § 181 (1) has not imposed such strict liability on stockholders or officers of corporations which own or operate the system from which a spill has occurred based solely on those statuses, and we decline to do so.

We next turn to the theory on which plaintiff prosecuted this action against the noncorporate individual defendants (Marcovici's estate, Dhinsa and Markowitz) as dischargers under Navigation Law § 181 (1). To clarify, plaintiff has expressly disavowed seeking to pierce the corporate veil of the corporations—Think Big and East 138th Street—(see, New York Assn. for Retarded Children v Keator, 199 AD2d 921, 922). Rather, plaintiff's theory of liability has been that the individual

defendants are personally liable as dischargers under Navigation Law § 181 (1) by virtue of their alleged control of, or their ability to control, corporate activities and their actions or omissions in causing, aggravating or neglecting the gasoline spills. Thus, we address the viability of such a theory to impose personal liability on these individual defendants as dischargers within the purview of Navigation Law § 181 (1) and § 172 (8).

For reasons to follow we hold that, as a matter of fact and law, the respective statuses of Marcovici, his estate and Dhinsa—as officers and stockholders of these corporations—do not provide a basis under Navigation Law § 181 (1) for imposing personal liability upon them for clean-up costs in view of the lack of evidence of their active involvement in corporate operations relating to the spills. Further, as to Markowitz, we find absolutely no basis for the imposition of personal liability against her under any relevant section of the Navigation Law.

Extending personal liability to individuals such as stockholders or officers who have developed a sufficient relationship to the activities of a corporate owner or operator for the consequences of environmental contamination is not novel under Federal law, although it has been carefully circumscribed by the Federal courts. Recent Federal case law relating to the enforcement of the Comprehensive Environmental Response, Compensation and Liability Act (42 USC § 9601 *et seq.*) (hereinafter CERCLA) is instructive. Under the interpretation of who constitutes a responsible "operator" of a contaminated site, Federal courts have imposed liability against corporate owners and operators, who are by statute strictly liable under CERCLA. They have also recognized personal liability for other individuals such as officers who are directly involved and actively participate in the corporate activities which led to the contamination (*see, State of New York v Shore Realty Corp.*, 759 F2d 1032, 1052-1053). Allegations that such individuals both "exercised management control over the company's operations" and "knowingly exercised direct and personal control over the handling of the hazardous substance at issue" have been determined to sufficiently state a claim for personal liability under CERCLA (*Arst Co. v Pipefitters Welfare Educ. Fund*, 25 F3d 417, 421). Thus, in addition to holding operators and owners strictly liable, CERCLA also "prevents [shareholders, corporate officers and management employees] from hiding behind the corporate shield when, as 'operators,' they themselves actually participate in the wrongful conduct prohibited

by the Act" (*Riverside Mkt. Dev. Corp. v International Bldg. Prods.*, 931 F2d 327, 330, *cert denied* 502 US 1004).[4]

Consistent with the relevant Federal and State statutes and developing case law, we hold that in order to hold a corporate stockholder, officer or employee personally liable under the Navigation Law for a discharge occurring at a site owned or operated by the corporation, that individual must, at a minimum, have been directly, actively and knowingly involved in the culpable activities or inaction which led to a spill or which allowed a spill to continue unabated (*see, Arst Co. v Pipefitters Welfare Educ. Fund, supra,* at 421; *State of New York v Shore Realty Corp., supra,* at 1052-1053; *see also, Matter of Jackson's Marina v Jorling,* 193 AD2d 863). In our view, this standard of liability strikes the appropriate balance between holding only culpable individuals personally liable for wrongful corporate activities leading to a discharge and protecting those individual stockholders and officers who remain uninvolved in corporate wrongdoing who are entitled to rely on the corporate form to insulate them from personal liability (*see, New York Assn. for Retarded Children v Keator, supra,* at 922). Thus, we hold that in order to impose such personal liability on stockholders or officers under Navigation Law § 181 (1), active wrongful conduct or culpable inaction must be established.

Plaintiff's theory with respect to the liability of the individual defendants herein is also assertedly premised on a decision of this Court imposing Navigation Law § 181 (1) strict liability upon a corporation which merely brokered the distribution of fuel oil, but did not own the system from which the spill occurred or actually deliver or own the oil which was spilled (*State of New York v Montayne,* 199 AD2d 674, 675). In that case, this Court concluded that the corporation—by virtue of its contractual obligation to furnish the oil to its customer—was "in a position to" prevent, halt or clean up the spill and

---

4. Plaintiff, in seeking to hold the individuals personally liable, also relies upon less recent Federal case law in which corporate officers were found personally liable for civil and/or criminal penalties for violating Federal public health legislation or regulations which were subject to Federal Food and Drug Administration enforcement (*see, United States v Park,* 421 US 658; *United States v Dotterweich,* 320 US 277; *United States v Hodges X-Ray,* 759 F2d 557). In comparison to the CERCLA cases, this line of case law appears to impose personal liability for corporate violations on corporate officers and managerial employees based upon their "responsible relationship" to the conditions which formed the basis of the violation. However, the Navigation Law does not address personal liability of officers and managers and we are not persuaded that this standard—which focuses more on the individuals' statuses and only secondarily on their culpable conduct—is the appropriate standard under this State's Navigation Law.

"thus had the responsibility for selecting the manner and means of delivery" of the oil (*id.*, at 675). While *Montayne* may in limited circumstances support holding a nonowner strictly liable where it was in a position to halt, clean up or prevent a spill, it does not further support imposing liability on the corporate officers and stockholders of a nonowner corporation or an owner corporation. Indeed, we decline to extend its rationale in that regard to the individual defendants herein in the absence of adequate proof of their relevant wrongful action or inaction on behalf of defendant corporations.

In light of the foregoing, we find that the jury charge regarding the basis for the imposition of personal liability was overly broad. Specifically, Supreme Court charged the jury as follows: "If you find that an individual defendant, that is, in this case [Marcovici (and later, his estate), Dhinsa or Markowitz] exercised control or managerial authority over a corporate defendant such as [Think Big or East 138th Street], and had the *power to prevent a discharge or discharges*, you may find that individual defendant liable for a discharge or discharges. It is defendants' conduct you must examine, not their status[es]" (emphasis supplied). The charge incorrectly suggested an almost unqualified and automatic basis for liability premised upon an individual's undefined "power to prevent" a discharge. However, as discussed, personal liability of officers and stockholders and other nonowners is more circumscribed. For example, the charge fails to require that the individuals played an active role in the corporate conduct or activities leading to the spill or in allowing the spill to continue. Applying the standard of liability articulated and adopted herein, we hold that none of the individual noncorporate defendants can be held personally liable as dischargers under Navigation Law § 181 (1).

Specifically, as to Marcovici, his ownership of all the stock in Think Big and his role as its sole officer do not support the imposition of personal liability upon him or his estate for the discharge at Think Big's site, in the absence of any evidence in the record that he or his fiduciaries wrongfully did or failed to do anything which led to or could have prevented the spills. While corporate stockholders and owners may be said to have some measure of control over their corporations, they are not necessarily involved in the day-to-day operations of the business. This is particularly true regarding a real estate corporation such as Think Big. Indeed, neither Marcovici nor his estate directly owned the system from which the discharge occurred, nor can it be said they discharged the gasoline by any culpable

acts or omissions. Likewise, there is no proof in the record that he or his estate were involved in the day-to-day operations of the gas station or that he knew of the spills or of DEC's directives regarding those spills. Clearly, the evidence adduced at trial did not provide a legally sound or sufficient basis upon which to impose personal liability on Marcovici or his estate as a discharger under Navigation Law § 181 (1).

We also find merit in Dhinsa's contention that he cannot be held personally liable. The proof submitted at trial indicated that Dhinsa was actually present at the gas station on only two occasions. While he is the sole shareholder and officer of the corporate operator of the station, no particular culpable activity or wrongful omission on his part was demonstrated at trial which would provide a basis for exposing him to personal liability as a discharger. Notably, there is no proof that either East 138th Street or Dhinsa was sent or ever received any noncompliance correspondence from DEC and he was never called as a witness at trial. If any proof actually exists which might establish Dhinsa's role in the spills or their continuation, plaintiff failed to proffer it.

We further find that the evidence presented at trial was entirely inadequate to support the imposition of personal liability against Markowitz. We outright reject plaintiff's central, unsupported assertion that Markowitz is liable as a discharger of petroleum on the theory that she was in control of the affairs of Think Big and wrongfully failed to take action to prevent or remedy the spills at the gas station (*compare, State of New York v Montayne*, 199 AD2d 674, 675, *supra*). Plaintiff's efforts to show any control by Markowitz of Think Big or of Marcovici's estate are based on speculation and conjecture. Indeed, the only conclusion to be drawn from the trial evidence is that Markowitz did not own, control or operate the gas station; she did not own any stock or hold any position in either of the corporate entities, nor was she involved in any respect whatsoever in the discharge of any gasoline. Neither her sophistication with respect to the retail sale of gasoline nor the fact that a number of documents filled out by others mistakenly listed her as the owner of the site make her a discharger.

Likewise, any marginal or indirect connection between Markowitz and Think Big—including that she may have discussed Marcovici estate business decisions with her 22-year-old daughter after the daughter became administrator of the estate in 1995—fails to establish that Markowitz played any legally cognizable active role in the business, the spills or the failure to remediate. Indeed, most of the State's proof against

Markowitz—as with the other individual defendants—was weak, nebulous and circumstantial. Absent any solid evidence of her culpable active involvement or omissions related to either corporation or to a spill, we readily find that there was no basis upon which to conclude that Markowitz was a discharger (*see, id.*).[5]

Next, we turn to the appeal by East 138th Street. Initially, we reject its contention that Supreme Court erred in failing to instruct the jury that statutory penalties can be imposed only where a discharger has "knowingly" acted in derogation of the Navigation Law. Navigation Law § 192 states as follows: "Any person who *knowingly* gives or causes to be given any false information as a part of, or in response to, any claim made pursuant to this article for cleanup and removal costs, direct or indirect damages resulting from a discharge, *or* who otherwise violates any of the provisions of this article or any rule promulgated thereunder or who fails to comply with any duty created by this article shall be liable to a penalty of not more than twenty-five thousand dollars for each offense in a court of competent jurisdiction" (emphasis supplied).

We have previously recognized that Navigation Law § 192 permits penalizing any person who knowingly gives or causes to give any false information in a claim for clean-up costs or in response to a claim for clean-up costs (*see, State of New York v Tarrytown Corporate Ctr. II*, 225 AD2d 82). In this regard, we interpret the "knowingly" limitation to apply only to the giving of false information. The remaining portion of section 192—beginning with the phrase "*or* who otherwise violates any of the provisions of [Navigation Law art 12]" (emphasis supplied)—read in context, plainly and unambiguously provides that any person or entity liable for clean-up costs as a violator shall be liable for statutory penalties without any requirement that the person or entity acted knowingly (*see, State of New York v Super Value*, 257 AD2d 708, *lv denied* 93 NY2d 815). Accordingly, Supreme Court correctly instructed the jury with respect to penalties against East 138th Street.

We do, however, find merit in the claim of East 138th Street that Supreme Court erred in giving a negative inference

5. We note that, in our view, Navigation Law § 181 (1) does not impose liability on individuals solely based on their having parental "control" or influence over the adult fiduciary of the stockholder of the corporate entity which owns the discharge site. If liability were so extended, the corporate attorneys and accountants, among others, would similarly be liable as dischargers. The fact is, no legally sufficient nexus ever existed between Markowitz, Think Big or the estate.

charge. At trial, the court allowed plaintiff to read to the jury the deposition testimony of an employee of East 138th Street wherein he consistently invoked his privilege against self-incrimination. The employee did not testify at trial, having apparently failed to respond to plaintiff's subpoena. In its charge, the court instructed the jury that it could infer that the testimony of the employee would not have supported the trial position taken by East 138th Street.

Initially, we recognize that the use of deposition testimony of an employee of a party is permitted for any purpose by any adversely interested party (see, CPLR 3117 [a] [2]). However, while a party's invocation of the privilege against self-incrimination can be used to draw an adverse inference against that party in a civil case (see, Marine Midland Bank v Russo Produce Co., 50 NY2d 31, 42-43; Matter of Rauss v Johnson, 243 AD2d 849; Matter of De Bonis v Corbisiero, 155 AD2d 299, lv denied 75 NY2d 709, cert denied 496 US 938; Fritz v Fritz, 88 AD2d 778; see also, Matter of Commissioner of Social Servs. v Philip De G., 59 NY2d 137, 141; Matter of Steiner v De Buono, 239 AD2d 708, lv denied 90 NY2d 808), "[n]o inference arises from the invocation of the privilege by a nonparty witness" (Prince, Richardson on Evidence § 5-710, at 303 [Farrell 11th ed]; cf., Califano v City of New York, 212 AD2d 146, 153-155; Bikowicz v Sterling Drug, 161 AD2d 982, 985-986). Although corporate employees may in certain circumstances be considered parties along with their corporate employer, it does not follow that corporate employees are automatically parties (see, Niesig v Team I, 76 NY2d 363). Here, the record is insufficient to support the treatment of this employee as the alter ego of East 138th Street so as to permit treating him as a party inseparable from East 138th Street (see, id., at 374) and, in any event, plaintiff did not make the requisite showing on the record effectively entitling it to a missing witness inference (see, Marine Midland Bank v Russo Produce Co., supra, at 42-43; see also, People v Gonzalez, 68 NY2d 424, 427-428).

Accordingly, because of the likely prejudicial effect of the improper negative inference the jury was permitted to make (see, CPLR 2002), we find that East 138th Street has been denied its right to a fair trial on the issue of penalties—the only issue it addressed in its appeal—and is entitled to a new trial to determine the propriety and amount of penalties under Navigation Law § 192.

We have considered the parties' remaining contentions and find them to be without merit.

Cardona, P. J., Peters, Carpinello and Graffeo, JJ., concur.

Ordered that the judgment is modified, on the law, with one bill of costs to defendants, by reversing so much thereof as (1) held the individual defendants—the estate of Emanoil Marcovici, Gurmit Singh Dhinsa and Leah Markowitz—personally liable for clean-up costs and statutory penalties, and (2) awarded plaintiff statutory penalties against defendant 242 East 138th Street, Inc.; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.