County of Westchester v McKinsey & Co., Inc. (2026 NY Slip Op 50309(U))

[*1]

County of Westchester v McKinsey & Co., Inc.

2026 NY Slip Op 50309(U)

Decided on March 3, 2026

Supreme Court, Suffolk County

Pastoressa, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 3, 2026
Supreme Court, Suffolk County

The County of Westchester, et al., Plaintiff(s),

againstMcKinsey & Company, Inc., Defendant(s).

Index No. 4000004/2021

Napoli Shkolnik PLLC, Melville, NY, and Zimmer, Citron & Clarke LLP, Cambridge, MA, for plaintiffsGoodwin Procter LLP, New York, NY, and Hogan Lovells US LLP, New York, NY, for defendant

Joseph C. Pastoressa, J.

I. Facts and procedural history
In this action, plaintiffs, a consortium of counties, towns, and cities throughout New York, seek to hold defendant, McKinsey & Company, Inc., responsible for McKinsey's alleged role as a marketing consultant to nonparty Purdue Pharma, L.P. Plaintiffs allege that Purdue manufactured and marketed oxycontin, an opiate, with McKinsey's assistance. Plaintiffs claim that McKinsey, in collaboration with Purdue, increased sales of oxycontin by marketing it as safe and effective, notwithstanding a possible side effect of addiction. Plaintiffs posit that as a result of their citizens' and employees' becoming addicted to oxycontin, they expended increased costs for, inter alia, police, social services, and health insurance. Plaintiffs interposed claims for violations of General Business Law §§ 349 and 350, violations of Social Services Law § 145-B, negligence, negligent misrepresentation, public nuisance, fraud (actual and constructive), "civil conspiracy/joint and several liability," "civil aiding and abetting," and unjust enrichment. 
Defendant now moves to dismiss the complaint under CPLR 3211 (a) (5) and (7).
II. Analysis
A. Res judicata
CPLR 3211 (a) (5) allows for dismissal of an action when it is barred by, inter alia, res judicata. McKinsey argues that all of plaintiffs' claims are barred by res judicata based on a consent order and judgment in an action entitled The People of the State of New York, by Letitia James, Attorney General of the State of New York, against McKinsey & Company, Inc. United States (Supreme Court, Suffolk County, index no. 400001/2021) (the prior action). 
Res judicata bars a claim when there was a prior "disposition on the merits . . . between the same parties, or those in privity with them, of a cause of action arising out of the same transaction or series of transactions as a cause of action that either was raised or could have been raised in the prior proceeding" (Luis v Kocherlakota, 241 AD3d 1323, 1324 [quotation marks omitted]; see e.g. Matter of Josey v Goord, 9 NY3d 386, 389-390). In order for res judicata to apply, the party to be barred must have been a party to the prior action or in privity with a party to the prior action (e.g. Aspen Specialty Ins. Co. v RLI Ins. Co., Inc., 194 AD3d 206, 213).
Insofar as plaintiffs are seeking punitive damages, such request is barred by res judicata. As the Appellate Division has stated, punitive damages are only available when the complained-of conduct is "pervasive and grave misconduct affecting the public generally," and "those who pursue such damages in the context of private actions should be viewed as acting in the State's behalf, as 'private attorneys general'" (Fabiano v Philip Morris Inc., 54 AD3d 146, 150). Unlike compensation actually suffered by a plaintiff, "punitive damages claims are quintessentially and exclusively public in their ultimate orientation and purpose, and in that respect peculiarly appropriate for prosecution by the Attorney General in parens patriae" (id. [citations omitted]). The prior action, commenced by the State, arises out of the same acts or omissions as this action. And even though the State did not expressly seek punitive damages in its complaint, it could have done so (General Business Law § 349 [h]; see Abe v New York Univ., 169 AD3d 445, 449, lv dismissed 34 NY3d 1089; Robinson v 1528 White Plains Rd. Realty, Inc., 137 AD3d 426, 427; see generally O'Brien v City of Syracuse, 54 NY2d 353, 357). Thus, so much of the complaint as seeks punitive damages is dismissed under res judicata (Fabiano, 54 AD3d at 151-152 [holding that the plaintiff's request for punitive damages was barred by res judicata based on a prior action commenced by the Attorney General]).
Otherwise, though, plaintiffs were not parties to the prior action. Nor were they in privity with the State (People v Ingersoll, 58 NY 1; City of New York v Beretta U.S.A. Corp., 315 F Supp 2d 256, 263-274 [ED NY 2004] [thoroughly discussing the issue]). The State did not interpose the prior action on behalf of plaintiffs. Indeed, plaintiffs are statutorily empowered to sue on their own behalf (County Law § 51; General City Law § 20 [1]; Town Law § 65 [1]). Significantly, plaintiffs allege that they have suffered independent and distinct financial harm. McKinsey does not claim that the State is empowered to sue on behalf of local municipalities whenever local municipalities have suffered independent financial harm that was not suffered by the State.[FN1]
And, in fact, the Attorney General is not so empowered (see generally Executive Law § 63 et seq.). Such a rule would allow the non-aggrieved State to sue for, and collect on, every single instance when a county, town, city, or village is harmed by a breach of contract, for example, and prevent the aggrieved local municipality from receiving redress therefor. Simply put, McKinsey's argument fundamentally misunderstands the relationship between the State and its local municipalities, and totally ignores the statutory right of those local municipalities to independently sue when they have been wronged. The Court rejects it.
Thus, res judicata serves only to bar plaintiffs' claim for punitive damages; the remainder of plaintiffs' claims are unaffected by res judicata.[FN2]

B. Failure to state a cause of action
CPLR 3211 (a) (7) allows a defendant to seek dismissal of the complaint for failure to state a cause of action. "When reviewing a defendant's motion to dismiss a complaint for failure to state a cause of action, a court must give the complaint a liberal construction, accept the allegations as true[,] and provide plaintiffs with the benefit of every favorable inference" (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 30 NY3d 572, 582 [quotation marks and citations omitted]; see Sunyoung Jung v Reiner & Kaiser Assoc., 220 AD3d 643, 645). However, the Court is not required to accept bare legal conclusions or facts that are utterly contradicted by documentary evidence (Chic Realty 712, LLC v GSA Holding Corp., 220 AD3d 914, 916; Browne v Lyft, Inc., 219 AD3d 445, 446). Whether a plaintiff can ultimately prevail is irrelevant (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 38; Grabowski v Orange County, 219 AD3d 1314, 1314). "Although inartfully pleaded, a claim should not be dismissed when the facts stated are sufficient to make out a cause of action" (Houtenbos v Fordune Assn., Inc., 200 AD3d 662, 664; see Lam v Weiss, 219 AD3d 713, 715). "Where evidentiary material is submitted and considered on a motion to dismiss a complaint" for failure to state a cause of action, "the question becomes whether the plaintiff has a cause of action, not whether the plaintiff has stated one, and unless it has been shown that a material fact as claimed by the plaintiff to be one is not a fact at all and unless it can be said that no significant dispute exists regarding it, dismissal should not eventuate" (BT Holdings, LLC v Village of Chester, 189 AD3d 754, 759 [quotation marks and citations omitted], lv denied 36 NY3d 912; see Whelan v Cuomo, 220 AD3d 979, 980).
Negligence
McKinsey argues that the negligence claim should be dismissed because it did not owe a duty to third parties such as plaintiffs. The complaint describes a contractual relationship between McKinsey and Purdue (and other opioid manufacturers). "Generally, a contractual obligation, standing alone, will not give rise to tort liability in favor of a third party" (H.B. v Town of Oyster Bay, 236 AD3d 620, 621-622; see e.g. Rivera v Sodexo, Inc., 233 AD3d 721, 722), as "the duty to avoid harm to others is distinct from the contractual duty of performance" (Landon v Kroll Lab. Specialists, Inc., 22 NY3d 1, 6, rearg denied 22 NY3d 1084). 
"However, a party that enters into a contract to render services may be said to have [*2]assumed a duty of care, and thus, be potentially liable in tort to third persons, where (1) the contracting party, in failing to exercise reasonable care in the performance of its duties, launches a force or instrument of harm[;] (2) the plaintiff detrimentally relies on the continued performance of the contracting party's duties[;] or (3) the contracting party has entirely displaced the other party's duty to maintain the premises safely"
(Martinelli v Dublin Deck, Inc., 198 AD3d 635, 637; see Espinal v Melville Snow Contrs., 98 NY2d 136, 140). A passive omission that did not create or exacerbate a dangerous condition is not a force or instrument of harm (Stiver v Good & Fair Carting & Moving, Inc., 9 NY3d 253, 257-258; Church v Callahan Indus., 99 NY2d 104, 112-113). 

Here, broadly construed, plaintiffs sufficiently allege that McKinsey assumed a duty under the first Espinal exception, i.e., that McKinsey launched a force or instrument of harm. The complaint alleges, inter alia, that McKinsey (1) marketed and promoted oxycontin as less addictive and safer despite knowing that the contrary was true, and (2) pushed for physicians to prescribe higher doses of oxycontin despite knowing its unsafe and addictive qualities. Such acts arguably launched a force or instrument of harm by causing or contributing to the increased prescription of oxycontin and other opiates that McKinsey marketed as being safe despite knowing that they were not safe, which in turn caused or contributed to the opioid crisis that engulfed plaintiffs' communities.
Although McKinsey was in a contractual relationship with Purdue and other opiate manufacturers, plaintiffs are third parties, and Espinal governs whether a contractual duty may give rise to a duty to third parties, McKinsey does not address the Espinal exceptions at all. Instead, McKinsey argues that it had no ability to control what Purdue did with its recommendations. This argument fails for two reasons. Firstly, it was those recommendations that ostensibly launched a force or instrument of harm under Espinal, so McKinsey arguably had a duty not to make those recommendations in the first place. Secondly, the complaint pleads that McKinsey did much more than merely make recommendations and was actually embedded within Purdue to effectuate its marketing plans.
Even in the absence of an Espinal analysis, the Court concludes that, under the unique allegations contained in the complaint, plaintiffs have pleaded a duty owed to them by McKinsey. The complaint alleges that, as part of its consulting services, McKinsey, after assiduously designing marketing strategies to "turbocharge" sales of OxyContin—and to increase overall sales of prescription opioids—actively assisted in the deceptive marketing and sales practices employed by Purdue Pharma by helping it implement the recommended strategies, such as training the sales and marketing employees to target "high-volume" opioid prescribers to increase both the number of prescriptions and the dosages prescribed, despite knowing the dangers associated with opioid use and the harm to local governments caused by the opioid crisis. More particularly, they allege that McKinsey collaborated with Purdue Pharma's sales efforts by overseeing the execution of its marketing plan "Project Turbocharge"(later re-named "Evolve to Excellence"), which involved, in part, developing aggressive marketing and sales processes that misrepresented the risk of consuming opioids in higher dosages, crafting messaging and reducing training time for salespeople, and incentivizing sales of OxyContin and generic versions of the drug. The complaint further alleges that McKinsey's actions to promote growth in the overall opioid market were intended to benefit not only Purdue Pharma and its owners, but also its other clients in the pharmaceutical industry; that such actions "demonstrably exacerbated" the opioid crisis; and that McKinsey knew about the addictiveness of opioids and [*3]the effectiveness of its marketing strategies for increasing Purdue Pharma's revenues from opioid sales.
As plaintiffs allege that McKinsey devised the marketing strategy aimed at increasing OxyContin sales based on misleading claims, and that it was integral in implementing the marketing campaign, it can be inferred that McKinsey's relationship with Purdue Pharma placed it in the best position to protect against the harm allegedly resulting from its marketing strategy, and thus owed a duty of care to plaintiffs (see Davis v South Nassau Communities Hosp., 26 NY3d 563, 572; see also Bikowicz v Sterling Drug, 161 AD2d 982 [affirming a jury verdict in plaintiff's favor for, inter alia, negligent marketing of prescription drugs]).
Simply stated, plaintiffs have sufficiently pleaded that McKinsey owed a duty to them.
General Business Law §§ 349 and 350
General Business Law § 349 states that "[d]eceptive acts or practices in the conduct of any business, trade[,] or commerce[,] or in the furnishing of any service in this state[,] are hereby declared unlawful." To state a claim under section 349, a plaintiff "must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act" (Stutman v Chemical Bank, 95 NY2d 24, 29; see Beneficial Homeowner Serv. Corp. v Williams, 113 AD3d 713, 714). "Intent to defraud and justifiable reliance by the plaintiff are not elements" under the statute (Small v Lorillard Tobacco Co., 94 NY2d 43, 55).
General Business Law § 350 states that "[f]alse advertising in the conduct of any business, trade[,] or commerce[,] or in the furnishing of any service in this state[,] is hereby declared unlawful." Section 350-a defines "false advertising" as advertising that "is misleading in a material respect," which takes into account, inter alia, "the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity." A plaintiff must show "that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury" (DeAngelis v Timberpeg E., Inc., 51 AD3d 1175, 1177; see Andre Strishak & Assoc. v Hewlett Packard Co., 300 AD2d 608, 609).
Although McKinsey argues that these claims should be dismissed due to a lack of reliance, reliance is not required under these claims (Koch v Acker, Merrall & Condit Co., 18 NY3d 940, 941). Also contrary to McKinsey's argument, plaintiffs here have sufficiently pleaded direct damages (cf. City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 626-623; Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d 200, 206-207). In short, these claims are—at least at the pleading stage—viable.
Social Services Law § 145-b
Under Social Services Law § 145-b, it is unlawful for anyone, "by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter." The statute's prohibitions encompass those who conspire to violate it (People v Brooklyn Psychosocial Rehabilitation Inst., 185 AD2d 230, 234, lv denied 81 NY2d 702, rearg denied 81 NY2d 953, rearg dismissed 88 NY2d 875, cert denied sub nom Easton v New York, 510 US 862). Here, the complaint sufficiently pleads a claim under section 145-b.
Public nuisance
A public nuisance "is an offense against the State and is subject to abatement or [*4]prosecution on application of the proper governmental agency. It consists of conduct or omissions [that] offend, interfere with[,] or cause damage to the public in the exercise of rights common to all, in a matter such as to," inter alia, "endanger or injure the property, health, safety[,] or comfort of a considerable number of persons" (Copart Indus. v Consolidated Edison Co. of NY, 41 NY2d 564, 568 [citations omitted]; see City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 626).
The complaint properly pleads a claim for public nuisance, and McKinsey's arguments to the contrary are unpersuasive. Assuming, without deciding, that McKinsey is correct that a duty is required in the public nuisance context, as explained above, the complaint adequately pleads one. The complaint also sufficiently pleads proximate causation. Moreover, proof of a special injury distinct from the community at large is required only when a public nuisance claim is commenced by a private entity, as opposed to the governmental plaintiffs here (cf. 532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d 280, 292, rearg denied sub nom 5th Ave. Chocolatiere, Ltd. v 540 Acquisition Co., L.L.C., 96 NY2d 938).
Fraud
The elements of fraud are "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff[,] and damages" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559; see e.g. Mohammad v Rehman, 236 AD3d 892, 893). Fraud must be pleaded with particularity (CPLR 3016). The complaint alleges that McKinsey, acting together with Purdue Pharma to implement the "Project Turbocharge" strategy, purposefully misrepresented the uses, harms and benefits of Purdue Pharma's opioid products in carefully planned marketing and sales practices in an effort to boost sales and profits, that healthcare providers justifiably relied on such misrepresentations, and that such practices caused injury by dramatically increasing the number of opioid prescriptions issued by healthcare providers. From these allegations it reasonably can be inferred that the alleged false and misleading marketing and sales practices promoted by McKinsey caused the plaintiffs to pay for unwarranted opioid prescriptions and contributed to the consequential costs of opioid addiction borne by them. Dismissal of the claim for fraud, therefore, is denied.
For the same reasons, the claims for constructive fraud and negligent misrepresentation are sufficiently pleaded.
Unjust enrichment
The unjust enrichment claim is not viable and is dismissed. This claim is based on the allegations that "McKinsey was compensated for its work increasing opioid sales" and that McKinsey's retention of such compensation is unjust (Complaint, NYSCEF doc. 2, at ¶¶ 277-278).
Unjust enrichment, a quasi-contractual claim, "is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned" (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 142, rearg denied 12 NY3d 889). A plaintiff must establish "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered" (Columbia Mem. Hosp. v Hinds, 38 NY3d 253, 275 [quotation marks omitted]; see Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516). In addition, although strict privity is not required, there must be a relationship between the parties "that could have caused reliance or inducement" (Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182; see Georgia Malone & Co., Inc., 19 NY3d at 517-518; J.P. Plumbing Corp. v Born to Build Constr. Corp., 137 AD3d [*5]976, 977). 
The unjust enrichment claim is not based on any relationship between any plaintiff and McKinsey (see Georgia Malone & Co., Inc., 19 NY3d at 517-518; Mandarin Trading Ltd., 16 NY3d at 182; Mobile Audio Specialists, Inc. v ACIM NY, L.L.C., 198 AD3d 572, 572; Schroeder v Pinterest Inc., 133 AD3d 12, 27). It is therefore not viable, and is dismissed.
"Civil conspiracy/joint and several liability" and "civil aiding and abetting"
McKinsey does not direct any arguments toward these claims, so the Court will not dismiss them.
III. Conclusion
It is critical to note that this Court's decision was made through the prism of a CPLR 3211 pre-answer motion. In this procedural context, the law mandates that the complaint be broadly construed, and with extreme deference to the facts as alleged therein. The Court expresses no opinion on whether plaintiffs' surviving claims will overcome a subsequent motion under CPLR 3212, 4401, or 4404. 
This shall constitute the decision and order of the Court.
Dated: March 3, 2026Hon. Joseph C. Pastoressa, J.S.C.Papers considered: NYSCEF documents 19 through 28, 35, 42 through 50, 60 through 61

Footnotes

Footnote 1: By independent, the Court means that the municipality-plaintiffs have suffered distinct and independent damages, not that they were harmed and the State was not. Here, when both the State and the municipality-plaintiffs suffered distinct and independent damages as a result of McKinsey's conduct, both the State and the municipality-plaintiffs would be able to separately recover damages should McKinsey's conduct constitute a civil wrong.

Footnote 2:For the same reasons, plaintiffs are not barred from bringing this action based on the consent judgment in the prior action. Plaintiffs were not signatories to the consent judgment. The release was, by its plain terms, only made by the State, and not any of the plaintiffs here. Moreover, the consent judgment released only "all claims the Attorney General" could bring. As explained above, the Attorney General could not have brought claims on behalf of plaintiffs for the independent and distinct financial harm allegedly suffered by them. And although the Attorney General is not the arbiter of the law, the Court notes that an Assistant Attorney General correctly stated on the record that the consent judgment would not bar these plaintiffs' claims (Transcript, NYSCEF doc. 44, at 25-27 ["the Attorney General's position is that she does not have the ability to bring whatever claim it is that they have asserted in Geneseo, or would assert on these facts"]).