[909 NYS2d 314]

Lorilynn Fabiano, as Executrix of Maureen Fabiano, Deceased, et al., Plaintiffs, v Philip Morris Incorporated et al., Defendants.

Supreme Court, New York County, July 13, 2010

## APPEARANCES OF COUNSEL

*Jones Day*, New York City (*Daniel L. Russo* and *Robert Iscaro* of counsel), for R.J. Reynolds Tobacco Company and others, defendants. *Jones Day*, New York City (*Daniel L. Russo* and *Rob-*

*ert Iscaro* of counsel), and *Chadbourne & Parke LLP*, New York City, for Brown & Williamson Holdings, Inc., defendant. *Winston & Straw LLP*, New York City, for Philip Morris USA Inc., defendant. *Greenberg Traurig, LLP*, New York City, for Lorillard Tobacco Company, defendant. *Douglas & London, P.C.*, New York City, for plaintiffs.

### OPINION OF THE COURT

EMILY JANE GOODMAN, J.

This tobacco products liability action is brought by Lorilynn Fabiano Wojciehowski and Cosmo Fabiano (plaintiffs), the daughter and husband of the decedent Maureen Fabiano (herein decedent or smoker), who seek to recover damages for her injuries and death. Their theory implicitly characterizes all cigarettes as weapons of mass destruction. Decedent smoked cigarettes manufactured by defendants for a period of 36 years, and died of lung cancer allegedly as a result of her addiction. Defendants R.J. Reynolds Tobacco Company, Brown & Williamson Holdings, Inc. (formerly known as Brown & Williamson Tobacco Corporation, sued herein individually and as successor by merger to the American Tobacco Company), Philip Morris USA Inc. (formerly known as Philip Morris Incorporated), and Lorillard Tobacco Company (collectively, defendants) move, pursuant to CPLR 2221, for leave to renew their motion for summary judgment, and upon renewal, for an order dismissing plaintiffs' claims for negligent design and defective design in strict products liability.

## Background

The decedent, born on June 5, 1942, started smoking cigarettes at the age of 14, and smoked regularly until 1992. In June 2001, she was diagnosed with lung cancer and she died in February of 2002. She smoked several different brands over the years, including Winston (1956-1964), Marlboro Red (1964-1971), Marlboro Lights (1972-1974/1975), Kool (1975-1978/1979), and Kent Light 100 (1978/1979-1991). According to the moving papers, she had switched to Marlboro Lights cigarettes in or around 1972 because she believed, given the label "Lights," that they were safer and better for her.

Plaintiffs seek to recover compensatory and punitive damages, alleging that defendants manufactured, marketed, and sold cigarettes with knowledge that they are highly addictive and harmful to the health of smokers. In the first amended

complaint, plaintiffs allege seven causes of action: (1) negligence, including negligent design and negligent misrepresentation; (2) failure to warn prior to 1969 that cigarette smoking causes cancer and/or is addictive; (3) strict products liability; (4) fraud, deceit, and conspiracy; (5) fraudulent concealment; (6) loss of services, income, society, consortium, and companionship; and (7) wrongful death. Plaintiffs also seek to hold defendants collectively liable on theories of conspiracy, concerted action, and aiding and abetting. This motion deals with the design defect cause of action only.

Defendants' prior motion for summary judgment dismissing the first amended complaint, was decided by Justice Charles Ramos, who wrote:[1]

> "There is, in fact, a common standard concerning a defectively designed product, whether the claim is grounded in negligence or in strict liability:
>
> " 'a defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.' *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107 (19[8]3). . . .
>
> "Plaintiffs' expert witness, William Farone, Ph.D., a former Philip Morris employee, states that tobacco companies 'refused to adopt technology that would cause significant reductions in potent chemical toxic materials' such as harsher 'uninhaleable' tobacco which cannot be inhaled by most people, de-nicotized or no tar cigarettes. Affidavit of William A. Farone, Ph.D., dated March 29, 2006 at p 2. This clearly raises an issue of fact that it was feasible to design cigarettes in a safer manner. . . .
>
> "Dr. Farone's expert opinion, combined with the

---

1. Justice Ramos also found issues of fact on plaintiffs' fraudulent concealment and negligent misrepresentation claims to the extent that they are based on acts occurring after 1969 and on a common-law duty to disclose allegedly concealed material facts through channels of communication other than advertising or promotion. Justice Ramos also denied summary judgment on the request for punitive damages. However, the court dismissed plaintiffs' fraudulent misrepresentation, concerted action, conspiracy, and aiding and abetting claims. Subsequently, the Appellate Division, First Department, reversed the prior decision only on the issue of punitive damages (*Fabiano v Philip Morris Inc.*, 54 AD3d 146 [1st Dept 2008]).

balancing of the evidence presented by both parties, raises a triable issue regarding cigarettes' inherent risks and whether safer alternative designs existed. The evidence presented by plaintiffs raise[s] issues of fact as to whether defendants acted unreasonably in designing cigarettes by refusing to adopt safer technology, on its claim for negligently designed product. Additionally, plaintiffs raised an issue of fact as to whether cigarettes were not reasonably safe, and whether that was a proximate cause of the Decedent's injury. Accordingly, summary judgement is denied on plaintiffs' first and third causes of action for design defect." (*Fabiano v Philip Morris Inc.*, 16 Misc 3d 1130[A], 2007 NY Slip Op 51643[U], *5-6 [Sup Ct, NY County 2007], *revd on other grounds* 54 AD3d 146 [1st Dept 2008].)

After Justice Ramos issued his decision, the Court of Appeals established the legal standard for design defect claims as applicable to cigarettes in *Adamo v Brown & Williamson Tobacco Corp.* (11 NY3d 545 [2008], *rearg denied* 12 NY3d 769 [2009], *cert denied* 558 US —, 130 S Ct 197 [2009], *affg Rose v Brown & Williamson Tobacco Corp.*, 53 AD3d 80 [1st Dept 2008]). In *Adamo*, the decedent smoked American Tobacco Company and Philip Morris USA Inc. regular cigarettes for more than 40 years. The plaintiffs in that case alleged that the cigarette manufacturers designed their product negligently and should not have put them into the stream of commerce; they should have sold light cigarettes only (i.e., cigarettes that are lower in tar and nicotine). In finding that the plaintiffs failed to make out a prima facie case at trial, the Court of Appeals wrote that

"[h]ere, plaintiffs presented evidence from which a jury could find that light cigarettes—cigarettes containing significantly lower levels of tar and nicotine—are 'safer' than regular cigarettes, but they did not show that cigarettes from which much of the tar and nicotine has been removed remain 'functional.' The function of a cigarette is to give pleasure to a smoker; plaintiffs have identified no other function. Plaintiffs made no attempt to prove that smokers find light cigarettes as satisfying as regular cigarettes—indeed, it is virtually uncontested that they do not. Both regular and light cigarettes are available on the market, and the enhanced dangers that come from smoking regular cigarettes are well known, but large numbers of

consumers continue to prefer regular cigarettes."
(11 NY3d at 550.)

Defendants contend that *Adamo* now requires plaintiffs to prove that: (i) the cigarettes as designed were not reasonably safe;[2] (ii) it was feasible to produce cigarettes employing a different, safer design, i.e., contents that would avoid smoker's injury; and (iii) the alternative design (contents) would have been as acceptable, i.e., as marketable to consumers as the original design. With respect to the third element, defendants argue that plaintiffs cannot prove that any alternative design combination would be as acceptable to consumers as regular cigarettes are. William A. Farone, Ph.D., plaintiffs' expert, proposes three safer alternative designs for regular cigarettes: (1) "uninhaleable" tobacco common before the turn of the 19th century, similar to a cigar; (2) a de-nicotized cigarette; and (3) a virtually no tar cigarette (Farone aff ¶ 7).[3] Defendants contend that Dr. Farone's affidavit does not address whether any of his three proposed alternative designs would be as acceptable to consumers as the cigarettes sold by defendants. That is, would the plaintiffs' proposed alternatives be as successful in the marketplace. Further, defendants argue that Dr. Farone has no experience in the marketing or consumer acceptance of new products to allow him to offer such an opinion, although plaintiffs offer another affidavit from Dr. Farone, a former Director of Applied Research at Philip Morris from 1976 through 1984 (Farone aff ¶ 5), stating that he was hired to develop a safer, consumer acceptable cigarette, and worked with the manufacturing, development, and marketing departments of the company (*id.* ¶ 6). They argue that his expertise is a question for the jury.

Plaintiffs contend that *Adamo* does not apply to the facts of this case because, therein, "plaintiffs presented evidence from which a jury could find that light cigarettes . . . are 'safer' than regular cigarettes" (*Adamo*, 11 NY3d at 550), while here, the instant plaintiffs argue that no cigarettes on the market are

---

**2.** As noted in *Adamo*, that cigarettes are dangerous to human health is widely known, yet smokers continue to smoke (11 NY3d at 550).

**3.** Two of plaintiffs' proposed alternative designs are virtually identical to the alternative designs in the *Adamo* trial (*see Rose*, 53 AD3d at 92 [Catterson, J., dissenting] ["The plaintiffs' theory (at trial) was that an ultra light cigarette, *containing very low tar, or very little nicotine so as to be nonaddictive* was the reasonable feasible alternative design to the cigarettes manufactured by defendants, and that defendants should have ceased manufacturing regular cigarettes with more than .4 milligram of nicotine per cigarette" (emphasis supplied)]).

safe. According to plaintiffs, there is abundant evidence showing that light cigarettes are at least as dangerous as regular cigarettes, and that smokers mistakenly believe that light cigarettes are less dangerous than regular cigarettes, when, in fact, they are all dangerous. Plaintiffs contend that a jury should weigh the risk-utility factors and whether smokers would purchase alternative products.

The proposed alternative designs ("uninhaleable" tobacco, a virtually no-tar cigarette, and a de-nicotized cigarette) are, according to plaintiffs, as acceptable to consumers as regular cigarettes. Plaintiffs point to a Federal Trade Commission (FTC) report for the year 2006, which states that one in eight cigarettes sold is an "ultralight," containing six milligrams of tar or less (London affirmation, exhibit 16, table 4A). They further argue that their "uninhaleable" tobacco design, which functions more like a cigar, is acceptable to consumers, because cigars have been sold for centuries. The gist of plaintiffs' argument is that defendants, instead of manufacturing and marketing cigarettes qua cigarettes, should manufacture and distribute something entirely different.

Defendants argue that plaintiffs have failed to meet the *Adamo* standard of equal consumer acceptability. Uninhaleable cigarettes are not an acceptable design, according to defendants, because inhaleability is one of the functions of a cigarette, one of the reasons smokers smoke. They also contend that plaintiffs' other two designs—de-nicotized cigarettes and cigarettes containing virtually no tar—would not be bought by consumers. According to defendants, Philip Morris's lowest tar brand, Cambridge (a cigarette containing less than one milligram of tar and almost no nicotine), was withdrawn from the market after a few years of virtually nonexistent market share (reply affirmation of Robert Iscaro, exhibit 15). While one in eight cigarettes sold are "ultralight" cigarettes, i.e., contain up to six milligrams of tar, Dr. Farone's proposal does not contain up to six milligrams of tar, it proposes *no* tar.

Defendants' position, then, is that even if safer cigarettes were made available, those who, for some reason, take pleasure in the existing habit/addiction of smoking cigarettes, would reject the alternative.

Still, Dr. Farone believes that "uninhaleable" tobacco has "centuries of proven consumer acceptability," and that "[e]veryone knows that cigars are consumer acceptable and many people who smoke can and do smoke either" (Farone aff ¶ 7); with a

de-nicotized cigarette he states that "[t]he consumer derives the pleasure of smoking, the taste, the ritualistic behavior of lighting up, etc. . . . but can quit whenever [the consumer wishes]" (*id.*). Concerning the "virtually no-tar cigarette," Dr. Farone says that "all of the defendant companies sell now and have sold over the years cigarettes with 1 mg or less of tar by the FTC methods" (*id.*), "[i]t is self evident that the defendants consider them consumer acceptable as well or else they would not sell them" (*id.*). "Furthermore the tar levels in the lowest version of Now (R.J. Reynolds), Carlton (American Tobacco Company), Cambridge (Philip Morris 1980-85), Merit Ultra (Philip Morris) have tars that are lower than the Eclipse and Accord and are consumer acceptable to those companies" (*id.*). He adds: "Although none of the above would likely be as commercially successful or as profitable as nicotine laden or tar laden cigarettes mass marketed by the defendants, they were, nonetheless, determined at Philip Morris and the other manufacturers to be consumer acceptable." (*Id.* ¶ 9.)

A motion for leave to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination" (CPLR 2221 [e] [2]). Furthermore, the motion papers must contain a "reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221 [e] [3]; *see also Peebles v New York City Hous. Auth.*, 295 AD2d 189, 190 [1st Dept 2002]).

Although Justice Ramos decided the original motion for summary judgment, it is before this court pursuant to CPLR 2221 (a), "[a] motion for leave to renew or to reargue a prior motion . . . shall be made, on notice, to the judge who signed the order, unless he or she is for any reason unable to hear it." CPLR 2221 (b), states that "[t]he chief administrator may by rule exclude motions within a department, district or county from the operation of subdivision (a) of this rule" (*see also* 22 NYCRR 202.8 [a] ["(a)ll motions shall be returnable before the assigned judge"]). Therefore, the action was reassigned to this Part, after another judge recused herself (*see C & N Camera & Elecs. v Public Serv. Mut. Ins. Co.*, 210 AD2d 132, 133 [1st Dept 1994]; *Billings v Berkshire Mut. Ins. Co.*, 133 AD2d 919, 919-920 [3d Dept 1987], *lv dismissed* 70 NY2d 1002 [1988]).

*Adamo* represents a sufficient change in the law to support a motion to renew (*see Dinallo v DAL Elec.*, 60 AD3d 620, 621 [2d Dept 2009] [clarification of applicable case law "is a sufficient

change in the law to support renewal"]; *Roundabout Theatre Co. v Tishman Realty & Constr. Co.*, 302 AD2d 272 [1st Dept 2003] [same]). In essence, traditional risk-utility analysis is inapplicable to cigarettes because, as the *Adamo* case noted, "cigarettes are worse than useless" (11 NY3d at 551). Accordingly, *Adamo* established a risk-satisfaction analysis. While plaintiffs argue that *Adamo* does not apply here, it is a Court of Appeals decision directly addressing product liability involving cigarettes and controls plaintiffs' design defect causes of action and this motion.

Plaintiffs are essentially taking issue with the *Adamo* plaintiffs' theory that light cigarettes are safer than regular cigarettes. Rather they argue that all cigarettes are dangerous and that defendants should replace them altogether. However, the Court of Appeals held only that the "plaintiffs failed to prove an essential element of their case: that regular cigarettes and 'light' cigarettes have the same 'utility' " (*id.* at 549). Stated otherwise, plaintiffs must show "the potential for designing . . . the product so that it is safer but remains functional" (*id.* at 550 [internal quotation marks and citation omitted]). Plaintiffs do not show that safer would be "functional," i.e., saleable, but rather argue what is now known as a cigarette should be replaced by something altogether different. While the idea may appeal to many, it strikes the court that this is like saying car X is just as dangerous as the faster car Y, and both should be replaced by skateboards.

Under the circumstances of this case, and the state of the law, the court finds that defendants have met their burden to establish that there are no alternatives to the regular and light cigarettes they sell, as smokers would be unwilling to purchase the proposed alternatives.[4]

As noted by the *Adamo* Court, "[t]he only 'utility' of a cigarette is to gratify smokers' desires for a certain experience," and "[t]he function of a cigarette is to give pleasure to a smoker" (*id* at 549, 550). While Dr. Farone states that his three

---

4. Contrary to plaintiffs' contention, *Adamo* is not limited to defective design claims in strict products liability. The plaintiffs in *Adamo* brought a cause of action for *negligent design*, and the Court specifically stated that consumer acceptability is a requirement of both causes of action (*Adamo*, 11 NY3d at 550 ["While this is a negligence, not a strict liability, case, similar requirements apply—specifically, plaintiffs here had to prove that 'it was feasible to design the product in a safer manner.' This means, to use again the language of *Voss*, the plaintiffs must show 'the potential for designing . . . the product so that it is safer but remains functional' ([*Voss*] at 109)"]).

alternatives are "consumer acceptable," that is conclusory and does not address whether consumers would find these alternatives—though safer—to be satisfying substitutes for regular or light cigarettes (*see id.* at 550 ["Plaintiffs made no attempt to prove that smokers find light cigarettes *as satisfying* as regular cigarettes" (emphasis supplied)]; *Rose,* 53 AD3d at 81 ["the record contains no basis for a finding that light cigarettes have the same utility for the vast majority of smokers as do regular cigarettes"]).[5] Dr. Farone does not indicate that the proposed alternative designs " 'offer[ ] the same results' " as regular or light cigarettes, or that there is no " 'functional difference' " between regular or light cigarettes and the proposed alternative designs (*Rose,* 53 AD3d at 85, quoting *Felix v Akzo Nobel Coatings,* 262 AD2d 447, 448 [2d Dept 1999]). The First Department in *Rose* explained that

> "it must be recognized that two differently designed products that, like regular cigarettes and light cigarettes, are generally similar in function, may nonetheless yield results so different in quality as to make it impossible to characterize the design of the safer product as a feasible alternative to the design of the more hazardous product" (*id.* at 84).

For reasons unknown to this court, smokers/addicts use this substance and prefer it in its most dangerous form because of "the taste of tar and the psychological effect of nicotine" (*id.* at 82). As noted in *Clinton v Brown & Williamson Holdings, Inc.* (498 F Supp 2d 639, 648 [SD NY 2007]), "reduced carcinogen" and "non-addictive" cigarettes have been investigated and researched by the cigarette industry, and have been "indisputably rejected by consumers."

What plaintiffs suggest is that what constitutes this object known as a cigarette should be devoid of all of its major properties. Yet that would no longer be a cigarette, and this court is prevented by both the U.S. Congress and the New York Court of Appeals from taking steps to ban cigarettes. Whatever the

5. For instance, even though plaintiffs refer to the Cambridge brand of cigarettes as an example of a "consumer acceptable" low-tar alternative, they offer no evidence that this brand is as pleasing, satisfying, or acceptable to smokers as regular cigarettes (*see Rose,* 53 AD3d at 84). The court does, however, reject defendants' contention that profit should figure into the consumer acceptability analysis. "The issue is not (as plaintiffs suggest) whether tobacco companies would make a profit, but whether the alternative product design would fulfill the public's demand" (*id.*) for a substance which, however deleterious, happens to be legal.

merits of that position, this court does not have the power to consider, control or reduce tobacco industry profits. Thus, plaintiffs have not shown that there is a feasible, consumer-acceptable, alternative design to regular or light cigarettes.

Nor does this court have the power to mandate a ban on cigarettes. Under *Adamo*, "[t]o hold, as plaintiffs ask, that every sale of regular cigarettes exposes the manufacturer to tort liability would amount to a judicial ban on the product. If regular cigarettes are to be banned, that should be done by legislative bodies, not by courts" (*Adamo*, 11 NY3d at 551). "[T]he vast majority of courts have been markedly unreceptive to the call that they displace markets, legislatures, and governmental agencies by decreeing whole categories of products to be outlaws" (*Clinton*, 498 F Supp 2d at 648 [internal quotation marks and citation omitted]; *see also Tuosto v Philip Morris USA Inc.*, 672 F Supp 2d 350, 366 n 10 [SD NY 2009] ["This result would also contradict the congressional policy that has allowed the sale and use of cigarettes in this country to continue"]). Those who preach that judges are activists who decide in accordance with their own ideas and opinion are incorrect.

Finally, the court denies plaintiffs' request for additional discovery. Where it appears that "facts essential to justify opposition may exist but cannot then be stated," a court has the discretion either to deny the motion or to order a continuance to permit the opposing party an opportunity to obtain the required disclosure or affidavits (CPLR 3212 [f]). The party seeking further disclosure must show an evidentiary basis to suggest that discovery may lead to relevant evidence (*Bailey v New York City Tr. Auth.*, 270 AD2d 156, 157 [1st Dept 2000]; *Ruttura & Sons Constr. Co. v Petrocelli Constr.*, 257 AD2d 614, 615 [2d Dept 1999], *lv dismissed in part and denied in part* 93 NY2d 956 [1999]). The "mere hope that further disclosure might uncover evidence likely to help [plaintiffs'] case" provides no basis for postponing summary judgment (*Maysek & Moran v Warburg & Co.*, 284 AD2d 203, 204 [1st Dept 2001]; *see also Jones v Surrey Coop. Apts.*, 263 AD2d 33, 38 [1st Dept 1999]). Here, plaintiffs have not identified facts essential to justify opposition to defendants' motion. Indeed, plaintiffs have not identified any evidence which would establish that their proposed designs are acceptable substitutes for regular or light cigarettes.

Since this decision addresses plaintiffs' design defect claims only, plaintiffs' fraudulent concealment, negligent misrepre-

sentation, wrongful death, and loss of consortium claims remain undisturbed.

## Conclusion

Accordingly, it is hereby ordered that the motion (sequence number 018) of defendants R.J. Reynolds Tobacco Company, Brown & Williamson Holdings, Inc. (formerly known as Brown & Williamson Tobacco Corporation, sued herein individually and as successor by merger to the American Tobacco Company), Philip Morris USA Inc. (formerly known as Philip Morris Incorporated), and Lorillard Tobacco Company, for leave to renew their motion for summary judgment is granted, and upon renewal, the negligent design and defective design causes of action (first cause of action, complaint ¶ 332 [o], and third cause of action) are dismissed.[6]

---

6. The court's decision and order dated July 8, 2010 is superceded and replaced by this amended decision and order of the court.