[862 NYS2d 487]

LORILYNN FABIANO, as Executor of MAUREEN FABIANO, Deceased, et al., Respondents, v PHILIP MORRIS INC., Now Known as PHILIP MORRIS USA INC., et al., Appellants, et al., Defendants.

First Department, July 22, 2008

### APPEARANCES OF COUNSEL

*Greenberg Traurig, LLP*, New York City (*Alan Mansfield, Israel Rubin, Robert J. Kirshenberg* and *Stephen L. Saxl* of counsel), for Lorillard Tobacco Company, appellant.

*Winston & Strawn LLP*, New York City (*Thomas J. Quigley* of counsel), for Philip Morris USA Inc., appellant.

*Chadbourne & Parke LLP*, New York City, and *Jones Day*, New York City (*Stephen J. Kaczynski* and *Harold K. Gordon* of counsel), for Brown & Williamson Holdings, Inc. and another, appellants.

*Douglas & London, P.C.*, New York City (*Michael A. London* and *Gary Douglas* of counsel) and *Kenneth Chesebro*, Cambridge, Massachusetts, for respondents.

### OPINION OF THE COURT

LIPPMAN, P.J.

Maureen Fabiano died in 2002 after a bout with lung cancer. In this action brought by her estate and her surviving spouse, it is alleged that her cancer was caused by carcinogens she ingested by smoking cigarettes, an activity in which she engaged over a 36-year period, beginning in 1956 when she was 14 years of age. It is further alleged that defendants, the manufacturers of the cigarettes smoked by Ms. Fabiano, by dint of a carefully orchestrated and sustained campaign of advertising and misinformation directed particularly at young people, were instrumental in inducing Ms. Fabiano to begin smoking and to persist in the activity, even while they were in possession of information showing that cigarette smoking was addictive and seriously deleterious to health. The complaint, on various theories, seeks compensatory damages on Maureen Fabiano's behalf,

and an award for her surviving spouse for loss of consortium. This appeal, however, poses no issue bearing upon plaintiffs' claims of entitlement to compensation for personal injury. Rather, what is at issue is the viability of plaintiffs' separate claim seeking an assessment of punitive damages. The issue is raised not by reason of any deficiency in the allegations detailing defendants' misconduct, but in light of the circumstance that the very conduct and transactions complained of have already been the subject of an action, and the final judgment entered in that action is now alleged by defendants to bar plaintiffs' claim under the doctrine of res judicata.

The action upon which defendants premise their assertion of res judicata was brought by the New York State Attorney General in 1997 "in parens patriae on behalf of the People of the State of New York, in order to protect their welfare." It is not disputed that the course of conduct by defendants detailed in the Attorney General's complaint, beginning in the 1950s and extending into the succeeding decades, notably involving defendants' targeting of young people in their advertising and marketing of cigarettes, was materially indistinguishable from the course of conduct alleged against these same defendants in the instant action. Nor, even if it were essential to our res judicata analysis, which it is not, is it disputable that the Attorney General's complaint sought, as does the present complaint, "punitive or exemplary damages in an amount . . . sufficient to punish defendants and to deter future unlawful conduct."

In November 1998, the Attorney General's action was settled when the New York State Attorney General along with the attorneys general of 45 other states entered into a Master Settlement Agreement. As is here relevant, that Agreement expressly provided for the release of claims "for past conduct . . . in any way related . . . to (A) the use, sale, distribution, manufacture, development, advertising, marketing or health effects of, (B) the exposure to, or (C) research, statements, or warnings regarding, Tobacco Products," and defined claims expansively, specifically including within the definition "punitive damages . . . accrued or unaccrued." Also expansive was the Agreement's definition of those who were deemed to be releasing claims thereunder. Pursuant to the Agreement, releasors of claims included, in addition to the states, "persons or entities acting in a parens patriae . . . private attorney general . . . or any other capacity, whether or not any of them participate in this settlement"

insofar as such persons or entities sought "relief on behalf of or generally applicable to the general public in such Settling State or the people of the State, as opposed solely to private or individual relief for separate and distinct injuries."

In December 1998, the Master Settlement Agreement was reduced to a consent decree and final judgment, and shortly thereafter the proposed judgment was judicially approved, finally concluding the Attorney General's action on the merits (*State of New York v Philip Morris, Inc.*, 179 Misc 2d 435 [1998], *affd* 263 AD2d 400 [1999]).

Under the doctrine of res judicata, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981]), and, as noted, the transactions giving rise to this action and the concluded 1997 action do not materially differ. Plaintiffs, however, were not parties to the 1997 action and may not be bound by the judgment concluding it, unless, of course, their interests were represented in the prior proceeding so that they may be deemed privies of the plaintiffs in that proceeding (*see Green v Santa Fe Indus.*, 70 NY2d 244, 253 [1987]). It is plaintiffs' contention that although the prior proceeding was brought by the Attorney General in parens patriae on behalf of all the residents of the state, including the decedent and her surviving spouse, the interests plaintiffs seek to vindicate in this action nonetheless went unrepresented in the earlier proceeding because that proceeding, in distinction to this one, sought redress not for particularized personal injury but for harm to the State and its residents generally. The State, plaintiffs point out, would have had no standing to assert parens patriae claims premised simply on personal injuries sustained by private citizens. Agreeing with these contentions, the motion court, in denying summary judgment dismissing plaintiffs' punitive damages claims on the ground of res judicata, observed, "[t]he Fabianos are asking for punitive damages in relation to Mrs. Fabiano's personal injuries, and subsequent death caused by cigarette smoking. Plaintiffs in this action are pursuing a private claim which by definition cannot be encompassed within the *parens patriae* umbrella" (16 Misc 3d 1130[A], 2007 NY Slip Op 51643[U], *8).

While it is undoubtedly true that plaintiffs' private claims seeking compensation for personal injury could not have been

prosecuted by the Attorney General "within the *parens patriae* umbrella" (*see Alfred L. Snapp & Son, Inc. v Puerto Rico ex rel. Barez*, 458 US 592, 600, 607 [1982]), the claim asserted by them for punitive damages is not similarly disqualified, for punitive damages claims are quintessentially and exclusively public in their ultimate orientation and purpose (*see Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d 603, 613 [1994]), and in that respect peculiarly appropriate for prosecution by the Attorney General in parens patriae. Such claims do not, even when asserted in the context of a personal injury action, essentially relate to individual injury. They are allowed, "not to compensate the injured party but rather to punish the tortfeasor and to deter th[e] wrongdoer and others similarly situated from indulging in the same conduct in the future" (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489 [2007]). Indeed, the courts of this state have been so adamant that punitive damages are "a social exemplary 'remedy', [and] not a private compensatory remedy," that the imposition of such damages for private purposes has been held to violate public policy (*Garrity v Lyle Stuart, Inc.*, 40 NY2d 354, 358 [1976]).

A claim for punitive damages may, of course, be rooted in personal injury, but for such a claim to succeed the injury must be shown to be emblematic of much more than individually sustained wrong. It must be shown to reflect pervasive and grave misconduct affecting the public generally (*see Walker v Sheldon*, 10 NY2d 401 [1961]), to, in a sense, merge with a serious public grievance, and thus merit punitive, indeed quasi-criminal sanction (*see Cooper Industries, Inc. v Leatherman Tool Group, Inc.*, 532 US 424, 432 [2001]; *and see Home Ins. Co. v American Home Prods. Corp.*, 75 NY2d 196, 203 [1990]) by the State. As Chief Judge Breitel observed in *Garrity*, punitive damages are in their true aspect a prerogative reserved to the State for the accomplishment of social purposes (40 NY2d at 358), and it is thus fitting that those who pursue such damages in the context of private actions should be viewed as acting in the State's behalf, as "private attorneys general" (*see e.g. Jackson v Johns-Manville Sales Corp.*, 781 F2d 394, 403 [1986], *cert denied* 478 US 1022 [1986]; *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 644 F2d 594, 623 [1981], *cert denied sub nom. Lin v American Airlines, Inc.*, 454 US 878 [1981]). Indeed, it was precisely to such a role that plaintiffs evidently aspired when, in drafting their complaint, they, like the New York State Attorney General before them, sought "[p]u-

nitive and exemplary damages for the . . . acts of the Defendants who demonstrated a complete disregard . . . [for] the safety and welfare of the general public." However, a claim by a private attorney general to vindicate what is an essentially public interest in imposing a punitive sanction cannot lie where, as here, that interest has been previously and appropriately represented by the State Attorney General in an action addressed, on behalf of all of the people of the State, including plaintiffs and the decedent, to the identical misconduct. Relitigation of the claim is, under these circumstances, barred under the doctrine of res judicata (*see Clinton v Brown & Williamson Holdings, Inc.*, 498 F Supp 2d 639, 652-653 [SD NY 2007] and *Brown & Williamson Tobacco Corp. v Gault*, 280 Ga 420, 627 SE2d 549 [2006] [both holding that judgments entered upon the Master Settlement Agreement bar subsequent claims for punitive damages premised upon the conduct addressed in the underlying actions brought by the state attorneys general]).

Plaintiffs' arguments in responding to the appeal do not merit extensive additional comment, not only because they are in their specifics newly raised at this late juncture, but also because they proceed from the premise, which we have already rejected as fundamentally untenable under New York law, that punitive damages are properly awarded to remediate "harms done to private individuals," i.e., that there is some significant private interest to be vindicated by a claim for punitive damages that necessarily went unrepresented by the Attorney General in the prior action. A claim for punitive damages is not, as plaintiffs contend, merely an appendage to or an element of a claim for personal injury, sharing the underlying compensatory claim's private character and remedial objectives. Although punitive damages claims depend upon the existence of an underlying cause of action for compensatory relief, and are for that reason described as "parasitic" (*see Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 NY2d at 616), they are nonetheless distinct claims, seeking relief upon a vastly different evidentiary predicate than that which would suffice to support a claim for personal injury, and are justified as a matter of policy for public ends essentially removed from the redress of private harm (*see e.g. New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 315-316 [1995]).

In view of the decidedly public nature of the interests properly vindicated by a punitive damages claim, plaintiffs' argument that the Master Settlement Agreement limits the preclusive ef-

fect of the ensuing judgment is manifestly without merit. While a judgment's preclusive effect may be limited by provisions in an underlying settlement agreement splitting a claim and specifically saving a severed portion of the claim from release (*see e.g. Keith v Aldridge*, 900 F2d 736, 740 [1990], *cert denied sub nom. Keith v Rice*, 498 US 900 [1990]; *and see* Restatement [Second] of Judgments § 26 [1] [a]), no such limitation applicable to claims for punitive damages is discernible from the Master Settlement Agreement. Indeed, the Agreement acknowledges the survival only of claims for "private or individual relief for separate and distinct injuries" and specifically releases claims "seeking relief on behalf of or generally applicable to the general public," expressly including within its enumeration of released claims, claims for "punitive damages . . . accrued or unaccrued."

Also untenable in light of the ultimately distinct and public nature of the subject punitive damages claim and the just quoted language from the Master Settlement Agreement is plaintiffs' contention that the claim had not accrued before the Master Settlement Agreement was executed and thus could not have been released by it or have been precluded by the ensuing judgment. It is true that plaintiffs' claims for personal injury may not have accrued before the Master Settlement Agreement was executed and judgment entered thereon, the decedent having become symptomatic only in 2000, some three years after execution of the Master Settlement Agreement. However, the claim plaintiffs would now assert for punitive damages, based upon defendants' course of conduct in connection with the marketing of tobacco products over a period of decades encompassing the decedent's use of such products (which ceased in 1992), most certainly had accrued. Indeed, that claim, ultimately premised upon public, not personal, injury, had not only accrued but had also been interposed and prosecuted by the Attorney General on behalf of all New York residents, including plaintiffs and the decedent, in the litigation concluded in the Master Settlement Agreement and ensuing judgment. This being the case, the claim may not now be relitigated by plaintiffs; it is res judicata.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered August 3, 2007, which, to the extent appealed from, denied so much of the motion by Philip Morris USA (formerly known as defendant Philip Morris Inc.), Brown & Williamson Holdings (formerly known as defendant Brown & Williamson Tobacco Corporation, individually

and as successor by merger to defendant American Tobacco Company), and defendants R.J. Reynolds and Lorillard as sought summary judgment dismissing the punitive damages claim, should be reversed, on the law, without costs, and the motion granted to the extent of dismissing that claim.

GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered August 3, 2007, reversed, on the law, without costs, and the motion by Philip Morris USA Inc. (formerly known as defendant Philip Morris Inc.), Brown & Williamson Holdings, Inc. (formerly known as Brown & Williamson Tobacco Corporation, individually and as successor by merger to American Tobacco Company), R.J. Reynolds Tobacco Company and Lorillard Tobacco Company for summary judgment granted to the extent of dismissing the punitive damages claim.