Douglas v City of New York (2026 NY Slip Op 26001)

[*1]

Douglas v City of New York

2026 NY Slip Op 26001

Decided on January 5, 2026

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 5, 2026
Supreme Court, New York County

Charles Douglas, JULIAN GILBERT, DEREK BARON, EMILY MARTIN, Plaintiff,

againstThe City of New York, POLICE OFFICER STEVEN FERREIRA, POLICE OFFICER AARON HUSBANDS, POLICE OFFICER PATRICK KING, POLICE OFFICER EDWIN NIEVES, POLICE OFFICER KEVIN HERRERA, POLICE OFFICER CHRISTOP MARTINEZ, POLICE OFFICER ANTHONY PEREZ, Defendant.

Index No. 153606/2021

For Defendant City of New YorkJeffrey Scott Dantowitz, Esq.New York City Department of Law100 Church Street, Room 2-178New York, NY 10007(212) 356-0876For PlaintiffsBrandon Richard Fetzer, Esq. 
Debevoise & Plimpton LLP66 Hudson BoulevardNew York, NY 10001(212) 909-6000[email protected]Alexa Busser Lopez, Esq.Debevoise & Plimpton LLP66 Hudson Boulevard EastNew York, NY 10001(212) 909-6415 
[email protected]

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 226 were read on this motion for SUMMARY JUDGMENT.
Upon the foregoing documents, plaintiffs Charles Douglas, Julian Gilbert, Derek Baron, and Emily Martin (collectively, "Plaintiffs") move for partial summary judgment seeking: (1) a declaration that Criminal Procedure Law ("CPL") § 150.20 prohibits arrests for eligible offenses; (2) a declaration that the policies and practices of the New York City Police Department ("NYPD") for handling appearance ticket-eligible offenses violate CPL § 150.20 and article I, § 12 of the New York Constitution; and (3) an order permanently enjoining the NYPD from violating CPL § 150.20 and article I, § 12 of the New York Constitution. Defendant the City of New York (the "City") opposes the motion and cross-moves, on behalf of all defendants, for partial summary judgment on Plaintiffs' first cause of action for declaratory relief and second cause of action alleging violations of article I, § 12 of the New York Constitution.BACKGROUNDPrior to January 1, 2020, whenever a police officer was authorized pursuant to CPL § 140.10 to arrest a person without a warrant for a class E felony or lesser offense, CPL § 150.20 provided that the officer "may, subject to the provisions of subdivisions three and four of section 150.40 of this title, instead issue to and serve upon such person an appearance ticket" (CPL § 150.20 [prior version, eff until Jan. 1, 2020]). Effective January 1, 2020, CPL § 150.20 was amended to substitute "shall" for "may." The current version of CPL § 150.20 provides, in relevant part:
§ 150.20 Appearance ticket; when and by whom issuable1. (a) Whenever a police officer is authorized pursuant to section 140.10 of this title to arrest a person without a warrant for an offense other than a class A, B, C or D felony or a violation of section 130.25, former section 130.40, section 205.10, 205.17, 205.19 or 215.56 of the penal law, he shall, except as set out in paragraph (b) of this subdivision, subject to the provisions of subdivisions three and four of section 150.40 of this title, instead issue to and serve upon such person an appearance ticket.(CPL § 150.20 [1][a]).[FN1]

The exceptions referenced in CPL § 150.20 (1) (b) prescribe circumstances in which "[a]n officer is not required to issue an appearance ticket," including, among others:
(b) An officer is not required to issue an appearance ticket if:(i) the person has one or more outstanding local criminal court or superior court warrants;(ii) the person has failed to appear in court proceedings in the last two years;(iii) the person has been given a reasonable opportunity to make their verifiable identity and a method of contact known, and has been unable or unwilling to do so, so that a custodial arrest is necessary to subject the individual to the jurisdiction of the court. For the purposes of this section, an officer may rely on various factors to determine a person's identity, including but not limited to personal knowledge of such person, such person's self-identification, or photographic identification. There is no requirement that a person present photographic identification in order to be issued an appearance ticket in lieu of arrest where the person's identity is otherwise verifiable; however, if offered by such person, an officer shall accept as evidence of identity the following: a valid driver's license or non-driver identification card issued by the commissioner of motor vehicles, the federal government, any United States territory, commonwealth or possession, the District of Columbia, a state government or municipal government within the United States or a provincial government of the dominion of Canada; a valid passport issued by the United States government or any other country; an identification card issued by the armed forces of the United States; a public benefit card, as defined in paragraph (a) of subdivision one of section 158.00 of the penal law; [. . .].(CPL § 150.20 [1][b][i]-[iii]).[FN2]

An appearance ticket is separately defined under CPL § 150.10, as follows:
§ 150.10 Appearance ticket; definition, form and content1. An appearance ticket is a written notice issued and subscribed by a police officer or other public servant authorized by state law or local law enacted pursuant to the provisions of the municipal home rule law to issue the same, directing a designated person to appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense. A notice conforming to such definition constitutes an appearance ticket regardless of whether it is referred to in some other provision of law as a summons or by any other name or title.(CPL § 150.10 [1]).
Shortly after the amendment's effective date, beginning in May 2020, thousands of New Yorkers participated in protests across New York City to bring attention to police brutality against Black people, the police killings of George Floyd in Minnesota and Breonna Taylor in [*2]Kentucky, police accountability, and racial injustice (see People of the State of New York v City of New York, US Dist Ct, SD NY, No. 21 Civ 322, Doc No. 1, ¶ 2). Plaintiffs allege that each of them was arrested for offenses at or near one of these demonstrations in May and June 2020 (NYSCEF Doc No. 206, ¶ 2). Plaintiffs further allege that they were "unlawfully arrested, handcuffed, and in some instances physically brutalized" by members of the NYPD, before being "transported and detained . . . in overcrowded, filthy, and overheated vehicles and held . . . in jail cells inside of police facilities for many hours, where little or no COVID-19 pandemic precautions were taken" (id., ¶ 3). Plaintiffs were ultimately taken to Central Booking, where they were issued appearance tickets for appearance ticket-eligible offenses encompassed by CPL § 150.20 (id.). Each plaintiff alleges that they remained in police custody for approximately six to eight hours (id., ¶¶ 25, 36, 57, 69).
Plaintiffs allege that these actions were taken in conformity with NYPD policy and practice, which instructs officers to "make unlawful arrests for low-level offenses" (id., ¶ 16). The second amended complaint further alleges that, despite revising its Patrol Guide several times after CPL § 150.20 was amended, the NYPD "has not updated the Patrol Guide to reflect CPL § 150.20's requirement to issue appearance tickets in lieu of arrests" (id.). Plaintiffs also cite a written policy issued during the May and June 2020 demonstrations entitled "Floyd Demo Quick Reference," which allegedly directed officers to arrest individuals for, among other things, low-level offenses (id.).
On April 14, 2021, Plaintiffs commenced this action by filing a summons and complaint (NYSCEF Doc Nos. 1, 2). Plaintiffs filed an amended complaint on June 13, 2022 (NYSCEF Doc No. 65). On July 12, 2022, the City moved, pursuant to CPLR § 3211 (a)(7), on behalf of all defendants, to dismiss the first, second, and third causes of action for declaratory relief, violations of article I, § 12 of the New York Constitution, and false arrest, for failure to state a cause of action (NYSCEF Doc No. 65). By decision and order dated April 6, 2023, the motion was granted to the extent that the complaint was dismissed as against the NYPD, and the balance of the motion was denied (NYSCEF Doc No. 91 [Stroth, J.]). The court held, among other things, that the causes of action were sufficiently pleaded and that a justiciable controversy existed for purposes of declaratory relief (id. at 14-16).
On September 13, 2024, the complaint was amended a second time pursuant to stipulation (NYSCEF Doc Nos. 129, 131). The second amended complaint added Police Officers Samut Gulu, Kevin Herrera, Christop Martinez, and Anthony Perez as defendants (NYSCEF Doc No. 135).
Plaintiffs now move for partial summary judgment seeking: (1) a declaration that CPL § 150.20 prohibits arrests for eligible offenses; (2) a declaration that NYPD policies and practices for handling appearance ticket-eligible offenses violate CPL § 150.20 and article I, § 12 of the New York Constitution; and (3) an order permanently enjoining the NYPD from violating CPL § 150.20 and article I, § 12 of the New York Constitution (NYSCEF Doc No. 154). Plaintiffs contend that NYPD policies and procedures adopted after the 2020 amendment require officers to arrest individuals alleged to have committed low-level offenses and to evaluate appearance ticket eligibility only after the individual has been arrested, as the common law defines that term (NYSCEF Doc No. 155 at 7).
Plaintiffs point to provisions of the NYPD Patrol Guide that direct officers to comply with arrest processing guidelines and remove the "prisoner" to a precinct or designated arrest facility before issuing an appearance ticket, and to arrest processing guidelines requiring [*3]handcuffing, transportation, searches, fingerprinting and palm-printing, booking paperwork, and placement in an arrest processing area (id. at 3). Plaintiffs argue that these procedures are unnecessary because NYPD officers are equipped with a mobile version of the NYPD Domain Awareness System ("DAS"), which allegedly permits officers to establish identity, access arrest history and prior convictions, and review warrant information without detention beyond the initial encounter (id.). Plaintiffs further argue that CPL § 150.20 and the broader statutory scheme require the issuance of appearance tickets at the scene, rather than at a precinct following transportation and detention, and that NYPD policies requiring detention and transport constitute impermissible arrests in violation of CPL § 150.20 and the New York Constitution (id. at 12).
The City opposes and cross-moves for partial summary judgment on the first and second causes of action. The City argues that Plaintiffs' claims for declaratory and injunctive relief are barred by res judicata because a stipulation of settlement in federal litigation consolidated under the caption In re New York City Policing During Summer 2020 Demonstrations, US Dist Ct, SD NY, No. 20 Civ 8924, is binding on Plaintiffs. [FN3]
The City contends that the settlement "specifically authorizes [the] NYPD to arrest, transport from the scene and detain for 7.5 hours or more" individuals who violate certain offenses, including offenses for which Plaintiffs here were issued appearance tickets (NYSCEF Doc No. 222 at 11-12). The City further argues that "arrest," as used in CPL § 150.20, refers to a custodial arrest leading to arraignment and the filing of an accusatory instrument, rather than an arrest as defined by the common law (id. at 8-15), and that the NYPD complied with CPL § 150.20 because Plaintiffs ultimately received appearance tickets (id. at 8-9). Finally, the City argues that Plaintiffs' claim under article I, § 12 fails because alternative remedies exist, declaratory relief would constitute an advisory opinion, and injunctive relief is unavailable because Plaintiffs' claims are premised on past conduct (id. at 16-19).
In opposition to the cross-motion, Plaintiffs argue that res judicata does not apply because they were not parties to, and were not in privity with parties to, the federal action; that the City's interpretation of "arrest" is inconsistent with CPL § 150.20 and legislative history; and that Plaintiffs are entitled to declaratory and injunctive relief.
On reply, the City reiterates its arguments and further asserts that Plaintiffs' claims are barred by res judicata because the Attorney General acted on behalf of all New Yorkers subjected to the challenged policies, and that Plaintiffs cannot obtain broad, class-like relief where compensatory damages are available and any future harm is speculative (NYSCEF Doc No. 226 at 6).
After submission, this matter was transferred to the undersigned on October 18, 2025, pursuant to an order of recusal issued by the justice previously assigned to the case (NYSCEF Doc No. 227). Oral argument was held on October 28, 2025 (NYSCEF Doc No. 230).
DISCUSSION
A motion for summary judgment "shall be granted if, upon all the papers and proofs [*4]submitted, the cause of action or defense shall be established sufficiently to warrant the Court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). The moving party bears the initial burden of proving a prima facie entitlement to summary judgment on the cause of action or defense, by tendering evidence in admissible form eliminating any material issues of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013] [internal quotation marks and citation omitted]). Upon proffer of evidence establishing a prima facie case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010] [internal quotation marks and citation omitted]).
Of the many issues raised by the motion and cross-motion, it is incumbent upon the court to first address the threshold issue of res judicata. "In New York, res judicata, or claim preclusion, bars successive litigation based upon the "same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was" (People ex rel. Spitzer v Applied Card Sys., Inc., 11 NY3d 105, 122 [2008] [internation citations omitted]; see also Hodes v Axelrod, 70 NY2d 364, 372 [1987] ["Simply stated, where there is a valid final judgment the doctrine of res judicata, or claim preclusion, bars future litigation between those parties on the same cause of action"]).
"The doctrine rests not on constitutional underpinnings but on sound public policy considerations," "[p]utting an end to a matter for all time is fair to the party who has endured the cost and travail of a litigation, fair to the party whose claim has once been heard, and in the interest of the judicial system generally" (Hodes v Axelrod, 70 NY2d at 372; see also Matter of New York State Labor Relations Bd. v Holland Laundry, Inc., 294 NY 480, 493 [1945] ["the public tranquility demands that, having been once so tried, all litigation of that question, and between those parties, should be closed forever"]).
The parties in this action disagree regarding both prongs of res judicata consideration. With respect to identity of claims, res judicata applies to "a cause of action arising out of the same transaction or series of transactions that either were raised or could have been raised in the prior proceeding" (Rojas v Romanoff, 186 AD3d 103, 108 [1st Dept 2020]; Silvar v Commr of Lab. of State, 175 AD3d 95, 104 [1st Dept 2019], citing Matter of Hunter, 4 NY3d 260, 269 [2005]). The City argues that the first prong is satisfied because Plaintiffs' claims in this action are substantially similar to those interposed in Payne v. City of New York, one of the four Consolidated Cases (NYSCEF Doc No. 226, reply mem at 2-3), and that the terms of the settlement agreement encompass the offenses for which Plaintiffs were arrested and provides parameters for transport and detention in circumstances where appearance tickets would be issued (NYSCEF Doc No. 222, memo at 5-6). Plaintiffs argue the settlement agreement is not a "judgment on the merits" regarding the "same cause of action" because the Consolidated Cases [*5]did not include any claims related to CPL § 150.20 and the terms of the settlement agreement do not address the purpose and scope of CPL § 150.20 (NYSCEF Doc No. 224, mem at 7-8). Therefore, the settlement agreement does not have preclusive effect because the terms of the agreement do not reflect intent to address the claims raised in this action (id.; NYSCEF Doc No. 230, oral argument tr at 22-23).
The matter cited by the City, Payne v. City of New York, interposed claims against the City and then-mayor Bill de Blasio, among others, regarding the NYPD response to the 2020 protests (US Dist Ct, SDNY, No. 20 Civ 8924, Doc No. 957, corrected second amended complaint). The Payne plaintiffs alleged that they were victims of police brutality during nine separate protests, and nine of the eleven plaintiffs were "arrested pursuant to mass arrest processing procedures for engaging in peaceful protesting" (id. ¶¶ 5-6). During these arrests, the "NYPD transported and held them for long periods of time without adequate food and water and in cramped, filthy, and unsanitary conditions that further endangered their health" (id.). Each plaintiff was detained by the NYPD, physically restrained with handcuffs or zip ties, and transported to a processing location (id. ¶¶ 117, 141, 164, 179, 198, 205). At the processing location, seven were issued a summons for disorderly conduct or curfew violation and released from custody (id.). The eighth was released from custody without being issued an appearance ticket or charged with a crime (id. ¶ 133).
The Payne complaint alleges, inter alia, that these actions were taken pursuant to NYPD policy and practice, including the memo titled "Floyd Demo Quick Reference," which "instructed all members of service that all arrests related to the demonstrations citywide would be brought to mass arrest processing centers ("MAPC")" (id. ¶ 97). The complaint also alleges that "the NYPD had a policy not to issue appearance tickets that would ordinarily be issued on the street, instead instructing officers to detain those individuals at [mass arrest processing centers ("MAPC")] for issuance of appearance tickets on protest-related offenses including, but not limited to, disorderly conduct and walking in the roadway" (id. ¶ 97). Payne also cites to the NYPD Patrol Guide, asserting that it "lacks a specific policy as to how protests should be policed" (id. ¶ 109).
The complaint further alleges that the injuries suffered by the Payne plaintiffs were the direct result of NYPD policy, custom and practice, including "a policy or practice instructing officers at protests to arrest protestors for offenses for which summonses should have been issued, which subjected protestors to mass arrests rather than releasing them from custody on to the street" (id. ¶ 222). This policy allegedly "subjected protestors to unreasonable and punitive transport, processing, and detention in unsanitary and hazardous conditions during the COVID-19 pandemic" (id. ¶¶ 222-223). Finally, the sixth cause of action interposed in the Payne complaint asserts that the detention and arrests of the eight plaintiffs who were held and later released with an appearance ticket violates Article 1, § 12 of the New York Constitution (id. ¶¶ 242-243).
While Payne does not directly cite CPL § 150.20, the complaint nevertheless contains many of the same factual allegations as the complaint filed in this action (see US Dist Ct, SDNY, No. 20 Civ 8924, Doc No. 957, corrected second amended complaint ¶¶ 97, 222-223, 242; NYSCEF Doc No. 206, second amended complaint ¶ 3, 15-16, 81-87). Both complaints allege that the plaintiffs were arrested pursuant to NYPD policy and practice for appearance ticket eligible offenses, in violation of Article 1, § 12 of the New York Constitution, that the plaintiffs were restrained, transported, and held for long periods of time in unsanitary conditions before [*6]being issued appearance tickets and released (id.), and both complaints cite to the Floyd Demo Quick Reference and the NYPD Patrol Guide regarding the applicable policy and practice (see SD NY Case No. 20-cv-08924, Docket No. 957, corrected second amended complaint ¶¶ 97, 109; NYSCEF Doc No. 206, second amended complaint ¶ 16). These similarities are relevant to the res judicata inquiry, but the court must also consider whether the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was, and whether the claim was brought to a final conclusion in the prior matter (Applied Card Sys., 11 NY3d at 122; Rojas v Romanoff, 185 AD3d at 108 ["As the Court of Appeals has stressed, this identity requirement is a linchpin of res judicata, which applies only when a claim between the parties has been previously brought to a final conclusion"] [internal quotation marks omitted]).
"It is fundamental that a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them" (Green v Santa Fe Indus., Inc., 70 NY2d 244, 253 [1st Dept 1987]; see also Fabiano v Philip Morris Inc., 54 AD3d 146, 151 [1st Dept 2008]). Privity is a nebulous concept, which is "not susceptible to hard-and-fast definition" (Applied Card Systems, 11 NY3d at 123, citing Watts v Swiss Bank Corp., 27 NY2d 270, 277 [1970] ["(T)he term privity does not have a technical and well-defined meaning"]; D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664 [1990] ["Privity, it has been observed, is an amorphous concept not easy of application"]). "Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding" (Green v Santa Fe Indus., Inc., 70 NY2d at 253).
Courts have found privity to be present, for example, between a union and one of its members (Weisz v Levitt, 59 AD2d 1002 [1977] [legal determination in declaratory judgment action brought by union binding in subsequent action by a union member]), a liability insurer and insured (Rojas v Romanoff, 186 AD3d at 112 ["where the extent of the insured's liability is in issue, the courts in such cases have repeatedly found privity between the liability insurer and its insured"], and between shareholders (Parkoff v General Tel. & Elecs. Corp., 53 NY2d 412, 415 [1981] [merits of shareholders' derivative action binding on other shareholders as members of a represented class]; cf. Green v Santa Fe Indus., Inc., 70 NY2d 244, 254-255 [1987] [minority shareholders not in privity with those in prior litigation where they could not be said to have controlled conduct of prior action to further their own claims and interests, which were not in all respects identical]). The court's inquiry turns not only on the relationship between the party and nonparty, but, rather, privity is determined for res judicata purposes "by considering whether the circumstances of the actual relationship, the mutuality of interests, and the manner in which the nonparty's interests were represented in the earlier litigation established a functional representation such that the nonparty may be thought to have had a vicarious day in court (Rojas v Romanoff, 186 AD3d at 111-112]).
Privity is also subject to due process limitations, particularly as applied to an individual that was not a party to the antecedent matter (Taylor v Sturgell, 553 US 880, 891 [2008] ["The application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court"]; see also Applied Card Systems, 11 NY3d at n 16, considering Taylor). The United States Supreme Court discussed the limitations of so called "representative suits" in Taylor v. Sturgell, holding that "[a] party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned []; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the [*7]interests of the nonparty" (553 US at 901). Adequate representation may also require notice of the original suit to the persons alleged to have been represented, such as in a class action (id. at n. 11).
Although Plaintiffs unquestionably were not parties in the Consolidated Cases, the City contends that they are in privity with the Consolidated Cases plaintiffs because they attended the same protests, were subjected to the same alleged police conduct, are represented by the same counsel, and seek the same relief (NYSCEF Doc No. 222, mem at 6-7). The City separately argues that Plaintiffs are bound by the settlement agreement because one of the four Consolidated Cases was commenced by the New York State Attorney General pursuant to Executive Law § 63 (1) and the parens patriae doctrine, and the Attorney General negotiated the settlement agreement on behalf of the citizens of the State (NYSCEF Doc No. 226 at 4-5). Plaintiffs oppose this contention, citing the limitations articulated in Taylor v Sturgell (NYSCEF Doc No. 224 at 7).
The City's assertion that Plaintiffs are in privity with the Consolidated Cases plaintiffs because they attended the same protests and were subjected to the same alleged police conduct is unpersuasive as a matter of law. Recognition of a "common law kind of class action" without procedural due process protections was roundly rejected by the United States Supreme Court in Taylor v Sturgell (553 US at 901 [rejecting preclusion based on identity of interests and some kind of relationship between parties and nonparties, absent procedural due process protections]). Representation by the same counsel in both suits also is also insufficient to establish privity between a party and nonparty (id. at 897 [vacating DC Circuit holding that party had adequately represented the interests of nonparty based, in part, on nonparty's subsequent engagement of the same attorney]). The court cannot conclude that the plaintiffs are in privity with the Consolidated Cases plaintiffs solely based on these common characteristics.
The Attorney General's involvement in the Consolidated Cases warrants separate consideration. Executive Law § 63 (1) provides, in relevant part, that the Attorney General "shall prosecute and defend all actions and proceedings in which the state is interested." Concurrently, "[t]he state has inherent authority to act in a parens patriae capacity when it suffers an injury to a quasi-sovereign interest apart from the interests of particular private parties" (People ex rel. Cuomo v Liberty Mut. Ins. Co., 52 AD3d 378, 379 [1st Dept 2008], quoting Alfred L. Snapp & Son, Inc. v Puerto Rico, ex rel., Barez, 458 US 592, 601 [1982)] [internal citation and quotation marks omitted]). Actions brought by the Attorney General doctrine are subject to the doctrine of res judicata (see Applied Card Systems, 11 NY3d at 124; Fabiano v Philip Morris Inc., 54 AD3d at 151).
The Attorney General commenced one of the Consolidated Cases, People of the State of New York v. The City of New York, et al., S.D.NY Case No. 21-cv-322 ("People v. City of New York"), on behalf of the People of the State of New York, "to end the pervasive use of excessive force and false arrests by the [NYPD] against New Yorkers in suppressing overwhelmingly peaceful protests" (SDNY Document No. 1, First Amended Complaint ¶ 1). The Attorney General's complaint cites Executive Law § 63 (1) and the parens patriae doctrine for authority to pursue the action, asserting that the Attorney General has standing to stop unlawful practices "where [] the interests of the People of the State of New York as a whole are implicated" (id. ¶¶ 16-17). The settlement agreement that resolved People v. City of New York and the three other Consolidated Cases reiterates that the Attorney General brought the claims in parens patriae (NYSCEF Doc No. 220, settlement agreement, whereas paragraph at 3; ¶ 3).
The second amended complaint filed by the Attorney General in People v. City of New York interposed claims against the City and the NYPD regarding alleged police misconduct in connection with public protests throughout New York City beginning in May 2020 and continuing into 2021 (SDNY Document No. 51). The complaint alleges that the NYPD engaged in unlawful detention and false arrests of protestors pursuant to NYPD policies, practices, and customs (id. ¶ 324-327, 399-401, 444-445), which deprived "New York Residents [] of their liberty, property, and constitutional rights and experienced bodily injury, pain and suffering" (id. ¶ 446).
The complaint sets forth detailed factual allegations concerning the experiences of multiple individuals whom the Attorney General alleges were subjected to false arrest, excessive force, and other constitutional violations as a result of these policies, practices, and customs. These allegations include accounts of individuals who were unlawfully detained, restrained, and held for several hours before being issued a summons for disorderly conduct or curfew violation and released from police custody (id. ¶¶ 255, 303, 310, 323, 398, 406). In some instances, the individuals were transported to secondary locations before receiving a summons for disorderly conduct or curfew violation (id.).[FN4]
Like Payne, the claims asserted in People v City of New York do not expressly allege violations of CPL § 150.20; rather, the complaint alleges generally that these individuals were falsely arrested (id. ¶¶ 324-327, 399-401, 444-445).
Payne, People v City of New York, and the two other Consolidated Cases were commenced between October 2020 and August 2021 and were consolidated for pretrial purposes shortly thereafter (In re New York City Policing During Summer 2020 Demonstrations, US Dist Ct, SDNY, 20 Civ 8924, 2024 WL 476367, at *3-4 [Feb. 7, 2024, McMahon, J.], aff'd sub nom New York v De Blasio, 2025 WL 857338 [2d Cir 2025]).[FN5]
Following consolidation, discovery was overseen by Magistrate Judge Gabriel Gorenstein (id. at *4). On July 8, 2022, Judge Gorenstein referred the parties to mediation, where they engaged in intensive settlement discussions over a period exceeding one year, attending more than fifty settlement sessions and exchanging dozens of drafts of the settlement agreement (id. at *5). During this time, the parties also conducted extensive discovery, including the taking of more than 140 depositions and the production and review of thousands of pages of documents and terabytes of video footage (id. at *4). The parties further engaged in substantial motion practice and attended numerous conferences with Judge Gorenstein throughout the litigation (id.).
After the parties reached an agreement, they submitted it to the District Court to be [*8]entered as a voluntary dismissal by stipulation of all parties (id. at 5). [FN6]
The settlement mandates the adoption of certain policies and procedures governing the policing of "First Amendment Activities" ("FAA") and incorporates and updates what the parties identified as existing NYPD policies, which emphasize minimizing the use of mass arrests during demonstrations in favor of de-escalation and a tiered response system (id.). The agreement further provides for reporting and oversight of the NYPD's response to protests, as well as revised training and policies designed to improve the treatment of members of the public and the press during FAAs (id.).
The settlement agreement also calls for the District Court to "engage in extensive oversight and involvement," at least during an initial four-year phase of its execution (id.). The parties are required to submit periodic reports regarding the NYPD's performance to the District Court during this time, and "may ask the court to resolve disputes over departmental funding concerns, fee payments, early termination of the Settlement or for general relief due to breach" (id.). Finally, the District Court "is designated as the final arbiter if there are any disagreements over the additional proposals made during the Execution Period to update NYPD policies and procedures relating to FAAs" (id.).
In reviewing the settlement agreement, the District Court determined that it qualifies as a consent decree, which required court approval (id. at 3).[FN7]
Having made this determination, the District Court was obliged to "review the terms of the Settlement and approve or disapprove it after evaluating the factors set out by the Second Circuit in one of two cases: either Kozlowski v Coughlin, 871 F2d 241 [2d Cir 1989], or U.S.S.E.C. v Citigroup Glob. Markets, Inc., 752 F3d 285 [2d Cir 2014])" (id.). The court conducted a thorough review of the agreement under the Kozlowski and Citigroup standards and determined that it satisfied both. The District Court approved the settlement agreement as a consent decree, finding that it was legal and clear, reflected a resolution of the actual claims asserted in the complaint, was not tainted by improper collusion or corruption, and would not disserve the public interest (id. at *15-19).
The agreement that was approved by the District Court also addresses the procedure for issuing appearance tickets. The settlement agreement contains provisions regarding both "General Principles Governing the Policing of FAAs," and "NYPD Policies and Practices Governing the Policing of FAAs" (id. at 3-6). The General Principles Governing the Policing of FAAs contains the following provision:
12. The NYPD embraces an approach to policing that assures the rights of protesters and uses arrest and force only when necessary and in compliance with the Constitution of the United States, the Constitution and laws of the State of New York, and the New York City Charter and local laws.(id. at 4).
The Procedures Governing Arrests at FAAs — The Red Light/Green Light Policy and Mass Arrest Processing," outlines a policy called "Red Light Green Light" (id. at 6-7). Under this new policy, "Red Light" offenses are "those offenses that require the approval of someone at the rank of Captain or above before any officer may make an authorized arrest" (id. at 7). The following offenses are designated as "Red Light" offenses: riot, incitement to riot, nonviolent obstruction of governmental administration, violation of emergency orders, disorderly conduct, trespass, criminal mischief 3 or 4, New York State Vehicle and Traffic Law ("VTL") 1156(a), and unlawful assembly (New York State Penal Law 240.10) (id.). Any offense not designated as a "Red Light" offense is considered a "Green Light" offense (id.).
The agreement sets forth various conditions governing arrests, including requirements related to documentation, probable cause, and arrest processing (id. at 7-8). These provisions include authorization for the establishment of a Mass Arrest Processing Center ("MAPC") (id.). Where the NYPD establishes a MAPC, it must publicly disseminate contact information for the MAPC; provide arrestees with clean water, food if held for more than two hours, personal protective equipment ("PPE"), prompt access to telephones, adequate medical care, and restroom facilities; facilitate prompt and accurate communication with members of the public and attorneys seeking information about arrestees; ensure that arrestees are placed at a MAPC consistent with their gender identity; and document the decision and justification for establishing the MAPC (id. at 7-8).
Finally, Paragraph 35 of agreement provides the following time constraints for processing arrests of adults:
35. Where an individual other than a juvenile or adolescent is arrested for a violation or misdemeanor, that person's arrest processing time shall not exceed 7.5 hours. The processing time may exceed this limit if: (1) An arrestee requires emergency medical care involving emergency services or receives medical attention at a medical or hospital facility immediately following the arrest that prevents timely arrest processing; (2) there is an exception under CPL [§] 150.20 or an out-of-state warrant requiring the individual to be brought to an arraignment court; or (3) an arrestee is charged with a violation, misdemeanor, or felony not involving an FAA during their arrest processing.(id. at 8).
Whereas all violations and misdemeanors are appearance ticket-eligible offenses under CPL § 150.20, Paragraph 35 necessarily contemplates that an individual detained for an appearance ticket-eligible offense may be held by the NYPD for up to 7.5 hours for processing. Were this not the case, Paragraph 35 would apply only to the exceptions enumerated in CPL § 150.20 (1)(b). However, the succeeding sentence of Paragraph 35 expressly provides that processing time may exceed 7.5 hours where "there is an exception under CPL § 150.20 or an out-of-state warrant requiring the individual to be brought to an arraignment court." Accordingly, the initial clause of Paragraph 35 must encompass appearance ticket-eligible offenses that are not subject to any statutory exception.
Although the settlement agreement did not expressly address the broader purpose and scope of CPL § 150.20, the constitutionality of the NYPD's procedures for issuing appearance tickets to protesters was squarely raised in the Consolidated Cases and resolved through the settlement agreement. Moreover, res judicata "applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation" (Silvar v Commr of Lab. of [*9]State, 175 AD3d 95, 104 [1st Dept 2019], citing Matter of Hunter, 4 NY3d 260, 269 [2005]).
While the parties rely heavily on People ex rel. Spitzer v Applied Card Sys., Inc. (11 NY3d 105) in their res judicata analysis, the Appellate Division, First Department's decision in Fabiano v Philip Morris Inc. (54 AD3d 146, 151 [1st Dept 2008]) presents more analogous circumstances. In Fabiano, the estate and surviving spouse of Maureen Fabiano commenced a wrongful death action against cigarette manufacturers, alleging that they induced Ms. Fabiano to begin and continue smoking through "a carefully orchestrated and sustained campaign of advertising and misinformation directed particularly at young people" (54 AD3d at 148). The defendant manufacturers moved for summary judgment on res judicata grounds, arguing that the same conduct and transactions had already been the subject of a prior action brought by the Attorney General, in a parens patriae capacity on behalf of the People of the State of New York, which was resolved through a Master Settlement Agreement reduced to a consent decree and final judgment (id.). The Supreme Court denied the motion, holding that the Fabianos were "pursuing a private claim which by definition cannot be encompassed within the parens patriae umbrella" (id. at 149).
On appeal, the Appellate Division, First Department, examined whether the Fabianos were bound by the Attorney General's prior agreement on the ground that they were in privity with the plaintiffs in that proceeding (Fabiano, 862 NYS2d at 149). In doing so, the Appellate Division, First Department, observed that the Fabianos "were not parties to the 1997 action and may not be bound by the judgment concluding it, unless, of course, their interests were represented in the prior proceeding so that they may be deemed privies of the plaintiffs in that proceeding" (id.). The Appellate Division, First Department, went on to hold that the Fabianos were in privity for purposes of their punitive damages claims, but not for their compensatory claims. In reaching this conclusion, the Appellate Division, First Department, reasoned that compensatory damages claims are private in nature and could not have been prosecuted by the Attorney General, whereas "the claim asserted by them for punitive damages is not similarly disqualified, for punitive damages claims are quintessentially and exclusively public in their ultimate orientation and purpose" (id. at 150). Emphasizing the public nature of punitive damages claims, the Appellate Division, First Department, further held that "a claim by a private attorney general to vindicate what is an essentially public interest in imposing a punitive sanction cannot lie where, as here, that interest has been previously and appropriately represented by the State Attorney General in an action addressed, on behalf of all of the people of the State, including plaintiffs and the decedent, to the identical misconduct" (id. at 151). Accordingly, "[r]elitigation of the claim is, under these circumstances, barred under the doctrine of res judicata" (id.).
Similarly, in the instant action, Plaintiffs assert both private and public claims arising from their detention or arrest during the 2020 racial justice protests. Their causes of action for false arrest, assault and battery, and excessive force are fundamentally private claims that could not have been prosecuted by the Attorney General and, in any event, are not subject to preclusion by the settlement agreement because Plaintiffs were not parties to the District Court action. By contrast, Plaintiffs also seek far-reaching injunctive and declaratory relief that would affect the public at large and are fundamentally public in nature.
The Attorney General commenced People v City of New York in her capacity as the legal representative of the People of the State of New York, on behalf of all New Yorkers and, specifically, on behalf of individuals detained or arrested by the NYPD during the 2020 protests [*10]who alleged that such actions violated their constitutional rights. Plaintiffs are four such individuals. The complaint filed by the Attorney General sought solely injunctive and declaratory relief and included allegations that individuals detained by the NYPD and transported to a MAPC before being released with an appearance ticket were subjected to false arrest and constitutional violations. People v City of New York was subsequently consolidated with Payne, which asserted specific factual allegations and claims concerning appearance tickets that are substantially similar to those raised by Plaintiffs here (see discussion of Payne, supra at 6-7, 9. 10). These claims are materially indistinguishable from those interposed by Plaintiffs in this action. The Consolidated Cases were ultimately resolved by a settlement agreement that was extensively negotiated between the Attorney General and the NYPD, reviewed by the District Court, and approved as a consent decree.
Accordingly, this court determines that Plaintiffs' claims for injunctive and declaratory relief are barred by the doctrine of res judicata, as those claims were litigated to final resolution by the Attorney General, in a parens patriae capacity, in the federal action. This determination is consistent with the due process considerations articulated in Taylor v Sturgell (553 US 880, 901 [2008]), because the Attorney General commenced People v City of New York on behalf of all New Yorkers, and Plaintiffs' interests in obtaining injunctive and declaratory relief are aligned with the interests advanced in that action. Moreover, the District Court's extensive review and approval of the settlement agreement as a consent decree demonstrate that the court took adequate measures to protect the interests of the Consolidated Cases plaintiffs and those whose interests aligned with theirs (id.; In re New York City Policing During Summer 2020 Demonstrations, 2024 WL 476367, at *15-19).
"[A] party's right to rely upon the finality of the results of previous litigation is a core principle of res judicata (Applied Card Systems, 11 NY3d at 125, citing Matter of New York State Labor Relations Bd. v Holland Laundry, Inc., 294 NY 480, 493 [1945] ["(T)he public tranquility demands that, having been once . . . tried, all litigation of (a) question, and between (the) parties, should be closed forever"]; Matter of Reilly v Reid, 45 NY2d 24, 28 [1978] ["Res judicata is designed to provide finality in the resolution of disputes"]). In keeping with this principle, settlement agreements are entitled to res judicata effect, according to the terms of the agreement (Applied Card Systems, 11 NY3d at 125). Permitting Plaintiffs to pursue broadly applicable injunctive and declaratory relief in this action would directly undermine the settlement agreement negotiated by the Attorney General, which remains subject to the continuing jurisdiction and supervision of the District Court.
In any event, the court is not persuaded that Plaintiffs would be entitled to declaratory relief. Although the parties frame their dispute largely around the meaning of the term "arrest" as used in CPL § 150.20 (1) (a), the controversy is, in substance, a disagreement over the permissible procedure for issuing an appearance ticket for an eligible offense. Plaintiffs contend that the plain language of the statute requires appearance tickets to be issued at the scene of the encounter. The statute, however, prescribes no such procedural requirement. Rather, CPL § 150.20 mandates the issuance of an appearance ticket in lieu of arrest for eligible offenses, while CPL § 150.40 provides only that an appearance ticket may be served anywhere within the county in which the offense was committed or in an adjoining county (CPL § 150.40 [3]-[4]). As one court has observed, "[w]hile it was mandated that such a violation of the law required an appearance ticket pursuant to CPL § 150.20, there is simply no indication that the appearance ticket was required to be issued at the scene of the occurrence, nor that there was a time limit on [*11]the arrest of the plaintiff" (Welch v City of New York, 2021 WL 5742458, at *1 [Sup Ct, NY County 2021]).
Plaintiffs urge this court to apply the "reasonable person" standard articulated in People v. Robinson (282 AD2d 75 [1st Dept 2001]) and related cases to the term "arrest" as utilized in CPL § 150.20. Under this standard, a detention is deemed an arrest where "a reasonable person, innocent of any crime, would have believed he was arrested if he was in the defendant's position," and a "proper temporary detention is one where a reasonable, innocent person would understand that he was being briefly detained in order to quickly obtain information either confirming or dispelling the officer's suspicion" (People v Robinson, 282 AD2d at 79). This standard is utilized to determine whether a cause of action for false arrest lies where the police detain an individual without probable cause. However, CPL § 150.20 only applies where a police officer is already authorized to arrest the subject individual pursuant to CPL § 140.10 (CPL § 150.20 [a][1] ["Whenever a police officer is authorized pursuant to section 140.10 of this title to arrest a person without a warrant"]), i.e. where the officer has probable cause to make an arrest (see People v Johnson, 66 NY2d 398, 414 n 2 [1985] [reasonable cause is "usually equated with probable cause"]).
Compliance with CPL § 150.20 requires a police officer to determine whether the offense at issue is appearance ticket-eligible, to verify the individual's identity, and to assess whether any of the statutory exceptions apply (CPL § 150.20 [1] [a]-[b]). In some, if not all, circumstances, these determinations necessitate a level of interaction that exceeds the brief detention contemplated for the purpose of quickly confirming or dispelling an officer's suspicion. In the absence of any statutory language limiting such interaction to the scene of the encounter, the court declines to infer such a limitation.
To hold otherwise would require the court to engraft procedural requirements onto the statute that the Legislature did not impose and that are unsupported by the text, structure, or purpose of CPL § 150.20, as well as by the authorities relied upon by Plaintiffs. Such a judicial expansion of the statute would be both imprudent and inconsistent with settled principles of statutory interpretation.
That said, this holding should not be construed to suggest that the NYPD may, in all circumstances, detain every individual charged with an appearance ticket-eligible offense for up to 7.5 hours. Rather, it reflects the limited conclusion that the parties to the Consolidated Cases—including the Attorney General—agreed that a processing period of up to 7.5 hours was reasonable in the specific context of a FAA, as defined by the settlement agreement.
Importantly, a cause of action for false arrest "may arise, even if an arrest was lawful in its inception, if there was an unnecessary delay in arraigning the plaintiff, or if the conduct of the police toward the plaintiff after the arrest was not legally justifiable" (Murray v City of New York, 74 AD3d 550, 550 [1st Dept 2010]). By the same token, a processing period of 7.5 hours could, depending on the circumstances of the encounter, constitute an unnecessary delay in the issuance of an appearance ticket, thereby giving rise to a viable claim for false arrest. Accordingly, individuals who are detained and transported to a precinct or other processing location are not without recourse where they plausibly allege that such detention violated their constitutional rights.
Finally, the City moves for summary judgment dismissing Plaintiffs' second cause of action for violations of article I, § 12 of the New York Constitution. Generally, plaintiffs do not have a private right of action under the State Constitution (Berrio v City of New York, 212 AD3d [*12]569, 569-70 [1st Dept 2023]). A cause of action for violation of the New York Constitution arises only where it is necessary to ensure full realization of a claimant's constitutional rights (Brown v State of New York, 89 NY2d 172, 186 [1996]; Martinez v City of Schnectady, 97 NY2d 78, 83-84 [2001]). Hence, New York limits recovery for state constitutional violations to circumstances where no alternate remedy is available (Lyles v State, 2 AD3d 694, 695 [2d Dept 2003], affd, 3 NY3d 396 [2004] ["In the present case, the recognition of the claimant's state constitutional claims was neither necessary nor appropriate to ensure the full realization of his rights, because the alleged wrongs could have been redressed by an alternative remedy"]). Where statutory or common law remedies are available to ensure a Plaintiff's constitutional rights, a cause of action under the State Constitution is not necessary or appropriate (Brown, 89 NY2d at 186; Martinez, 97 NY2d at 83-84; Berrio, 212 AD3d at 569-570). Here, Plaintiffs' causes of action for false arrest, assault and battery, and excessive force provide an alternate remedy to realize their individual constitutional rights. Therefore, the City's motion is granted with respect to the second cause of action.
To the extent they are not otherwise addressed herein, the court has considered the remainder of each party's arguments and finds them unpersuasive.
Accordingly, it is
ORDERED that Plaintiffs' motion for partial summary judgment is denied; and it is further
ORDERED that the City's motion for partial summary judgment is granted, and the first cause of action for a declaratory judgment, second cause of action for violations of article I, § 12 of the New York Constitution, and the claim for injunctive relief are dismissed; and it is further
ORDERED that the Clerk shall enter judgment in favor of defendants as set forth herein; and it is further
ORDERED that the first and second causes of action are severed, and the balance of the claims are continued; and it is further
ORDERED that the action shall continue as to the remaining causes of action; and it is further
ORDERED that the parties shall attend a status conference in this matter on January 20, 2026 at 2:15 p.m. at 80 Centre Street, Room 320, New York, New York.
This constitutes the order and decision of the court.
DATE 1/5/2026HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Additional amendments to CPL § 150.20 were enacted effective May 2022, May 2023, and September 2024, but are not substantively relevant to the issues raised in this motion. Therefore, only the current version will be referenced herein, except where otherwise noted.

Footnote 2:For the sake of brevity, only three of eleven enumerated exceptions are included here.

Footnote 3:Notably, the settlement agreement was approved by the District Court on April 17, 2024. This was over a year after this court's decision on the motion to dismiss. Thus, res judicata was not raised on the prior motion.

Footnote 4:The second amended complaint refers to the appearance tickets as summonses, which is included under the definition for appearance ticket set forth in the Criminal Procedure Law (CPL § 150.10 ["A notice conforming to such definition constitutes an appearance ticket regardless of whether it is referred to in some other provision of law as a summons or by any other name or title."]).

Footnote 5:Although not raised by the parties, one of the other four Consolidated Cases, Grey v. City of New York (SD NY Case No. 21 Civ. 6610), also contains claims interposed by plaintiffs who were detained by the NYPD and transported to a second location before being issued an appearance ticket.

Footnote 6:All parties to the Consolidated Cases signed on to the settlement agreement, except the Police Benevolent Association ("PBA"), who moved for an order disapproving the settlement. The District Court decision cited here decided that motion.

Footnote 7:"A consent decree is defined as a settlement that contains an injunction" (In re NYC Policing During Summer 2020 Demonstrations, 2024 WL 476367 at *11).